**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------x

SKYLER LUSK, TIA COUNCIL, VIKTORIA
O'BRIEN, AND JUSTIN BYROAD, *on behalf of*
*themselves and all other employees similarly situated,*

                                          *Plaintiffs,*

                    -against-                                             Civ. No.:  17-cv-6451 (MAT)

SERVE U BRANDS, INC., INSOMNIA COOKIES,
LLC, AND SETH BERKOWITZ,

                                          *Defendants.*

-------------------------------------------------------------------------x


**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION TO AMEND AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO
STRIKE**

William J. Anthony
Noel P. Tripp
Douglas J. Klein
JACKSON LEWIS P.C.
677 Broadway, 9th Floor
Albany, New York 12207
Telephone: (518) 512-8700
Facsimile: (518) 242-7730
*Attorneys for Defendants*

# <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT ............................................................................................. 1

PROCEDURAL HISTORY................................................................................................. 2

LEGAL ARGUMENT ........................................................................................................ 3

   I.      LEGAL STANDARDS. ....................................................................................... 3

   II.     PLAINTIFFS' PROPOSED AMENDMENTS DO NOT COMPLY WITH THE COURT'S ORDER.................................................................................................... 4

       A.  Plaintiffs' Proposed Minimum Wage Amendments Contravene the Court's Order Concerning Additional Wages, Which is the Law of the Case, and Do Not Cure the Defects the Court Identified. .................................................................... 4

       B.  Even If the Court Considers Plaintiffs' Proposed Amendments Notwithstanding Their Failure to Comply, Those Amendments Still Do Not Cure the Defects Identified In the Court's Order. ............................................................................. 6

       C.  Plaintiffs' Additional Generalized Allegations Regarding Overtime Work Do Not Satisfy the *Lundy* Standard. ................................................................................. 9

       D.  Even if Plaintiffs Lusk and O'Brien Have Satisfied the *Lundy* Standard (Which They Have Not), The Complaint Establishes That Their FLSA Rate Calculation Allegation Is Simply Erroneous.......................................................................... 11

   III.    EVEN IF THE COURT DETERMINES THAT PLAINTIFFS HAVE PLED AN FLSA CLAIM INDIVIDUALLY (WHICH THEY HAVE NOT), THE AMENDED COMPLAINT UTTERLY FAILS TO RENDER PLAUSIBLE PLAINTIFFS ALLEGATIONS REGARDING SIMULARLY SITUATEDNESS, AND ESTABLISHES THAT PLAINTIFFS ARE NOT SIMILARLY SITUATED. ......... 13

   IV.    IF THE COURT PERMITS THE COLLECTIVE ACTION ALLEGATIONS TO PROCEED (WHICH IT SHOULD NOT), THE EXISTING CONSENTS STILL MUST BE STRICKEN BASED ON THE MANNER IN WHICH THEY WERE ELICITED AND THE CLEAR RECORD THAT THE PUTATIVE OPT-IN PLAINTIFFS DID NOT CONSENT TO OR CORROBORATE PLAINTIFFS' CURRENT PROPOSED ALLEGATIONS............................................................ 15

   V.     PLAINTIFFS' COMPLAINT STILL FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A CLAIM AGAINST THE INDIVIDUAL DEFENDANT, MR. BERKOWITZ. ..................................................................................................... 20

   VI.    THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS, AND THIS ACTION SHOULD BE DISMISSED WITH PREJUDICE. ............................................................................ 24

CONCLUSION.................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Birch v. Pioneer Credit Recovery, Inc.*,
    No. 06 Civ. 6497 (MAT), 2007 U.S. Dist. LEXIS 41834 (W.D.N.Y. June 8,
    2007) ...................................................................................................................24

*Bouder v. Prudential Fin., Inc.*,
    No. 06 Civ. 4359 (DMC), 2007 U.S. Dist. LEXIS 83338 (D.N.J. Nov. 8,
    2007) ...................................................................................................................16

*Bravo v. Eastpoint Int'l, Inc.*,
    99 Civ. 9474 (WK), 2001 U.S. Dist. LEXIS 3647 (S.D.N.Y. Mar. 30, 2001) .......................23

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)..................................................................................12

*Chemi v. Champion Mortgage*,
    No. 05 Civ.1238 (WHW), 2006 U.S. Dist. LEXIS 100917 (D.N.J. June 21,
    2006) ...................................................................................................................16

*Dejesus v. HF Mgmt. Servs., LLC*,
    726 F.3d 85 (2d Cir. 2013)..............................................................................9, 10

*Ennocenti v. Unisys Tech. Servs., LLC*,
    No. 12-cv-6367, 2012 U.S. Dist. LEXIS 159763 (W.D.N.Y. Nov. 7, 2012)
    (Telesca, J) ......................................................................................................11, 25

*Frye v. Baptist Memorial Hosp., Inc.*,
    No. 07-2708, 2011 U.S. Dist. LEXIS 45605 (W.D. Tenn. Apr. 27, 2011) ............................15

*Gill v. Acacia Network*,
    No. 13 Civ. 9088 (TPG), 2015 U.S. Dist. LEXIS 34009 (S.D.N.Y. Mar. 18,
    2015) ...................................................................................................................22

*Glewwe v. Eastman Kodak Co.*,
    05 Civ. 6462T, 2006 U.S. Dist. LEXIS 33449 (W.D.N.Y. May 25, 2006)
    (Telesca, J.) .........................................................................................................25

*Gonzalez v. El Acajutla Rest. Inc.*,
    No. 04-cv-1513 (JO), 2007 U.S. Dist. LEXIS 19690 (E.D.N.Y. Mar. 20, 2007)...................16

*Gorham-DiMaggio v. Countrywide Home Loans, Inc.*,
    No. 1:08-CV-019 (LEK)(RFT), 2009 U.S. Dist. LEXIS 52078 (N.D.N.Y. June
    19, 2009) ...............................................................................................................5

*Herman v. RSR Sec. Servs.*,
   172 F.3d 132 (2d Cir. 1999)......................................................................20, 21, 22

*Hoffmann-La Roche v. Sperling*,
   493 U.S. 165 (1989)...........................................................................................16, 19

*Hosking v. New World Mort., Inc.*,
   No. 07-CV-2200 (MKB), 2013 U.S. Dist. LEXIS 130839 (E.D.N.Y. Sept. 12,
   2013) ............................................................................................................................5

*Int'l Audiotext Network v. American Tel. & Tel. Co.*,
   62 F.3d 69 (2d Cir. 1995).......................................................................................12

*Irizarry v. Catsimatidis*,
   722 F.3d 99 (2d Cir. 2013)................................................................................21, 22

*Jones v. Casey General Stores*,
   517 F. Supp. 2d (S.D. Iowa 2007) .........................................................................19

*Krumholz v. Vill. of Northport*,
   873 F. Supp. 2d 481 (E.D.N.Y. 2012) ...................................................................24

*Lopez v. Acme Am. Envtl. Co.*,
   No. 12 Civ. 511 (WHP), 2012 U.S. Dist. LEXIS 173290 (S.D.N.Y. Dec. 6,
   2012) .........................................................................................................................20

*Lundy v. Catholic Health System of Long Island Inc.*,
   711 F.3d 106 (2d Cir. 2013).................................................................................9, 11

*Male v. Tops Friendly Mkts.*,
   No. 07-CV-6573 (MAT), 2008 U.S. Dist. LEXIS 33004 (W.D.N.Y. April 22,
   2008) ...........................................................................................................................3

*Marosan v. Trocaire Coll.*,
   No. 13-CV-00825A(F) (LGF), 2015 U.S. Dist. LEXIS 43082 (W.D.N.Y.
   February 5, 2015)......................................................................................................12

*Moeck v. Gray Supply Corp.*,
   No. 03 Civ. 1950 (WGB), 2006 U.S. Dist. LEXIS 511 (D.N.J. Jan. 5, 2006) .......18

*Murray v. City of New York*,
   No.16-8072 (PKC) (S.D.N.Y. Aug. 16, 2017) ......................................................10

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2009).....................................................................................15

*Oram v. SoulCycle LLC*,
   979 F. Supp. 2d 498 (S.D.N.Y. Oct. 28, 2013).........................................................5

*Pazos v. Le Bernardin Inc.*,
No. 11 Civ. 8360 (RJS), (S.D.N.Y. Apr. 27, 2012) ................................................22

*Peng Bai v. Fu Xing Zhuo*,
No. 13 Civ. 5790 (ILG)(SMG), 2014 U.S. Dist. LEXIS 81173 (E.D.N.Y. June
13, 2014) ...........................................................................................................22

*Rosario v. First Student Mgmt. LLC*,
247 F. Supp. 3d 560 (E.D. Pa. 2017) ..................................................................10

*Sampson v. MediSys Health Network, Inc.*,
No. 10-cv-1342, 2012 U.S. Dist. LEXIS 103052 (E.D.N.Y. July 24, 2012)..............21, 22, 23

*Serrano v. I. Hardware Distribs., Inc.*,
No. 14-cv-2488 (PAC), 2015 U.S. Dist. LEXIS 97876 (S.D.N.Y. July 27,
2015) ..................................................................................................................10

*Smith v. Mastercraft Decorators, Inc.*,
No. 09 Civ. 579, 2011 U.S. Dist. LEXIS 125342 (W.D.N.Y. Oct. 25, 2011) ........................10

*St. Croix v. Genentech, Inc.*,
No. 12-cv-891-T-33EAJ (VHC), 2012 U.S. Dist. LEXIS 86742 (M.D. Fla.
June 22, 2012)....................................................................................................13

*Stoganovic v. Dinolfo*,
461 N.Y.S.2d 121 (4th Dep't 1983), *aff'd*, 61 N.Y.2d 812 (1984).........................20

*Tracy v. NVR, Inc.*,
04 Civ. 6541L, 2009 U.S. Dist. LEXIS 90778 (W.D.N.Y. Sept. 30, 2009),
*aff'd in relevant part at* 667 F. Supp. 2d 244 (W.D.N.Y. 2009) ......................................21, 22

*Volunteers of Am. of W. N.Y., Inc. v. Rochester Gas & Elec. Corp.*,
No. 06:99-CV-6238 (MAT)(MWP), 2014 U.S. Dist. LEXIS 99911 (W.D.N.Y.
July 21, 2014).......................................................................................................4

*Wolman v. Catholic Health Sys. of Long Island*,
No. 10-cv-1326 (JS) (ETB), 2011 U.S. Dist. LEXIS 48223 (E.D.N.Y. May 5,
2011) ..................................................................................................................23

*Woods v. N.Y. Life Ins. Co.*,
686 F.2d 578 (7th Cir. 1982) ...............................................................................16

*Xue Lian Lin v. Comprehensive Health Mgmt.*,
No. 08 Civ. 6519 (PKC), 2009 U.S. Dist. LEXIS 29779 (S.D.N.Y. Apr. 8,
2009) ..............................................................................................................20, 23, 24

**STATUTES**

29 U.S.C. § 203(d) ...............................................................................................................20

29 U.S.C. § 203(g) ...............................................................................................................20

29 U.S.C. § 216(b) ........................................................................................................ passim

**OTHER AUTHORITIES**

29 C.F.R. § 531.35 .................................................................................................................7

U.S. Department of Labor Field Operations Handbook .............................................6, 7

Fed. R. Civ. P. 12(b)(6) ..........................................................................................................3

Fed. R. Civ. P. 12(f) ...........................................................................................................3, 19

Defendants Serve U Brands, Inc., Insomnia Cookies, LLC (together "Insomnia"), and Seth Berkowitz (collectively hereinafter and only for purposes of this submission "Defendants") respectfully submit this Memorandum of Law in Opposition to Plaintiffs' Motion to Amend and in support of Defendants' Cross-Motion to Strike.

## PRELIMINARY STATEMENT

This Court previously dismissed Plaintiffs' Fair Labor Standards Act (FLSA) minimum wage and overtime claims because Plaintiffs failed to plead their rate of pay, that it fell below the applicable FLSA minimum wage, and that they worked overtime hours for which they were not properly compensated.  The proposed Amended Complaint does not cure these defects, or others identified in the prior briefing.   In contravention of their initial Complaint, statements in the proposed Amended Complaint, and most importantly this Court's Order dismissing their initial Complaint, Plaintiffs (at times) allege that mandatory delivery charges and other additional wages paid to them do not satisfy Insomnia's FLSA minimum wage obligations.  But, this Court already found the mandatory delivery charges and other additional wages are part of Plaintiffs' wage.  To advance their FLSA claims, Plaintiffs had to identify those amounts with specificity, and explain how their wages nevertheless fell below the applicable FLSA minimum wage.  That is the law of the case.  But they failed to do so.  Even when acknowledging these additional monies, Plaintiffs still claim to have suffered minimum wage violations without pleading plausible facts in support.

Plaintiffs also again fail to plead actual overtime hours worked, and thus yet again do not satisfy the FLSA overtime pleading standard in this Circuit.   Their proposed Amended Complaint states just one identifiable week in which one of the Plaintiffs, Mr. Lusk, worked overtime.  However, it is irrefutable on the record before this Court that Mr. Lusk received

overtime pay that week at a rate in excess of what the FLSA requires.  Plaintiffs' allegation regarding the regular rate calculation under the FLSA for overtime hours is not only inaccurate, but belied by other allegations in their proposed Amended Complaint.

Were the Court to find that Plaintiffs' scant and internally inconsistent additional allegations state either a minimum wage or overtime claim for that individual Plaintiff (which it categorically should not do), it must nevertheless find that Plaintiffs have failed to render "plausible" their claim that they are similarly situated even to each other, to say nothing of the thousands of additional individuals encompassed by the putative collective, and their collective action allegations must be dismissed with prejudice.

## **PROCEDURAL HISTORY**

Plaintiffs are former delivery drivers who delivered cookies, cookie cakes, milk and other similar products for Insomnia Cookies.  On July 11, 2017, they filed this putative class and collective action against Defendants alleging minimum wage and overtime violations of the FLSA and state law wage-hour violations under New York, Michigan and Indiana law (Docket No. 1).  On July 21, 2017, before Defendants were even served with the Complaint, Named Plaintiffs filed a motion for conditional certification pursuant to 29 U.S.C. § 216(b) (Docket No. 8) and a motion for an expedited hearing (Docket No. 9).

On September 15, 2017, Defendants filed a motion to dismiss the complaint and opposition to Plaintiffs' conditional certification motion (Docket Nos. 35-38).  On February 12, 2018, this Court granted Defendants' motion to dismiss (Docket No. 47 ("Order")).  Despite Plaintiffs' failure to make an appropriate request for leave to amend pursuant to the Local Rules, the Court, in the interests of justice, granted Plaintiffs an opportunity to file a motion for leave to file an amended complaint within 30 days of the Order if Plaintiffs so chose.

On March 13, 2018, Plaintiffs filed the instant motion to amend the Complaint attaching their proposed amended pleadings ("Amended Complaint" or "Am. Compl.") (Docket No. 48). Plaintiffs proposed amendments again plead three theories of FLSA liability: a minimum wage violation based on alleged failure to reimburse expenses associated with making deliveries (Am. Compl. ¶¶ 71-122), a minimum wage violation based on alleged failure to inform Plaintiffs that their pay was subject to a tip credit (*Id*. ¶¶ 123-129), and an overtime violation based on alleged failure to include certain payments to Plaintiffs in their "regular rate" of pay (*Id*. ¶¶ 130-144). Plaintiffs again purport to bring FLSA claims on behalf of all "delivery drivers" employed by Insomnia (*Id*. ¶¶ 211-227), not only against the corporate entities they allege operate Insomnia Cookies, but also, again, Chief Executive Officer Seth Berkowitz (*Id*. ¶¶ 50-60). 87 individuals have purported to join the four Named Plaintiffs in this action. Docket Nos. 3-4, 6-7.

## LEGAL ARGUMENT

### I.   LEGAL STANDARDS.

"A district court may deny leave to amend where such amendment would be futile." *Male v. Tops Friendly Mkts.*, No. 07-CV-6573 (MAT), 2008 U.S. Dist. LEXIS 33004, at \*12-13 (W.D.N.Y. April 22, 2008). Proposed amendments are futile if they cannot survive a motion to dismiss under Rule 12(b)(6). *Id*. Defendants refer to their prior moving papers for the Rule 12(b)(6) standard applicable to the instant opposition, and the Rule 12(f) standard applicable to Defendants' Cross-Motion. Docket No. 36 at 3-4.

## II.   PLAINTIFFS' PROPOSED AMENDMENTS DO NOT COMPLY WITH THE COURT'S ORDER.

### A.   Plaintiffs' Proposed Minimum Wage Amendments Contravene the Court's Order Concerning Additional Wages, Which is the Law of the Case, and Do Not Cure the Defects the Court Identified.

This Court dismissed Plaintiffs' FLSA minimum wage claim because Plaintiffs failed to adequately plead their rate of pay within the meaning of the FLSA.  It recognized as a matter of law that the mandatory delivery charges and other "additional wages" Insomnia paid Plaintiffs satisfy FLSA minimum wage requirements, and Plaintiffs must specify these amounts for the Court to determine whether Defendants failed to pay Plaintiffs the federally mandated minimum wage in any given week.  Order at 5.  The Court rightly found "without knowing the amount of the mandatory delivery charges and other additional wages paid to Named Plaintiffs, it is impossible to conclude from the allegations in the complaint that Defendants failed to pay them the federally mandated minimum wage in any given week."  *Id.*

Plaintiffs' proposed amendments assert that Defendants cannot claim an "offset" from their minimum wage obligations based on "additional wages" Insomnia paid them (Am. Compl. ¶¶ 69, 87, 98, 109, 118).[1]  This  pronouncement is not a factual allegation: it is an inaccurate summary legal conclusion and contravenes the Court's prior Order finding that "additional wages" paid to Plaintiffs must be accounted for when determining their rate of pay, which is the law of the case.  *Volunteers of Am. of W. N.Y., Inc. v. Rochester Gas & Elec. Corp.*, No. 06:99-CV-6238 (MAT)(MWP), 2014 U.S. Dist. LEXIS 99911, *9-10 (W.D.N.Y. July 21, 2014) ("[u]nder the law of the case doctrine, a decision on an issue made at one stage of a case

---

[1] Noticeably absent from most of their proposed amendments is any express reference to the mandatory delivery charges Plaintiffs previously admitted they were paid and which this Court found as a matter of law satisfy FLSA minimum wage requirements (*see* Docket No. 1 at ¶¶ 95, 100; *see also* Order at 5).  In the Amended Complaint, Plaintiffs recast the extra remuneration beyond their $5.00 hourly rate simply as "additional wages."

becomes binding precedent to be followed in subsequent stages of the  litigation."). *See also*, *e.g.*, *Hosking v. New World Mort., Inc.*, No. 07-CV-2200 (MKB), 2013 U.S. Dist. LEXIS 130839 at *13-14 (E.D.N.Y. Sept. 12, 2013) (law of the case doctrine binds the parties to the court's prior rulings); *Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, No. 1:08-CV-019 (LEK)(RFT), 2009 U.S. Dist. LEXIS  52078 at *28-29, n.11 (N.D.N.Y. June 19, 2009) (any decision made at one stage of a case is binding precedent throughout later stages of the case).[2]

The law of the case is the mandatory delivery charges and "additional wages" Insomnia paid Plaintiffs satisfy FLSA minimum wage requirements.  Plaintiffs cannot now plead otherwise to try move their FLSA minimum wage claims across the starting line.  But they do. They allege that these amounts do not count towards satisfying the FLSA minimum wage (Am. Compl. ¶¶ 69, 87, 98, 109, 118).  Because Plaintiffs allege mandatory delivery charges and "additional wages" do not satisfy FLSA minimum wage requirements, they necessarily failed to plead information regarding the amounts of such monies they received or the hours to which they were attributable as the Court said they must, information essential to determining whether Plaintiffs "weekly [pay] divided by [] hours worked fell under that of the applicable minimum wage for specified workweeks."  *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 506 (S.D.N.Y. Oct. 28, 2013) (applying FLSA standard to dismiss New York Labor Law (NYLL) minimum wage claim and citing *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013)).  In the absence of such information, the Court and Defendants are still left guessing what Plaintiffs allege was their rate of pay in any given week.  *See* Order at 5.  Accordingly,

---

[2] Further confusing the issue, Plaintiffs invoke the term "offset," a term customarily used in litigation to describe amounts invoked as a defense to reduce amounts later found to be due and owing.  The wages Insomnia contemporaneously paid Plaintiffs are not "offsets" – they were part of the minimum wages paid in the first instance. *See* Order at 5.

Plaintiffs failed to cure this pleadings defect, and their FLSA minimum wage claims must be dismissed, this time with prejudice.

### B. Even If the Court Considers Plaintiffs' Proposed Amendments Notwithstanding Their Failure to Comply, Those Amendments Still Do Not Cure the Defects Identified In the Court's Order.

Without admitting (as they did in their initial Complaint) that mandatory delivery charges and other "additional wages" must be included in Plaintiffs' rate of pay—which they must both as a matter of law and the law of this case—Plaintiffs allege that even when accounting for such additional monies, Plaintiffs still fell below minimum wage due to expenses (Am. Compl. ¶¶ 88, 99, 110, 119).  However, the proposed amendments still do not contain sufficient facts to support a minimum wage claim because Plaintiffs have not adequately pled their rate of pay or plausible expenses they incurred.

Plaintiffs minimum wage violation is premised on the theory that they suffered a minimum wage violation due to alleged unreimbursed expenses, which allegedly brought their wages below the full FLSA minimum wage of $7.25/hour in some instances.[3]  However, nowhere in the Amended Complaint do Plaintiffs ever allege what their expenses were.  They conclusorily cite IRS mileage reimbursement rates (Am. Compl. ¶¶ 75, 76).  But those rates are a safe harbor created for tax purposes and have no bearing here.  Nothing in the FLSA, its regulations or the U.S. Department of Labor Field Operations Handbook (FOH) require or even suggest that the IRS mileage reimbursement rates are the standard to evaluate FLSA minimum

---

[3] But, importantly, never below the FLSA tip credit minimum wage of $2.13/hour, which goes to both the sufficiency of their allegations as to themselves, and ever more so to the plausibility of their proposed nationwide collective group.  *See generally Section III infra.*

wage violations due to alleged automobile expenses.[4]  There is no federal law requirement for an employer to reimburse delivery driver expenses, and certainly not at the IRS rates.  Applicable regulations require only reimbursement for actual expenses incurred for the benefit of the employer if they "cut[] into the minimum wage or overtime was required to be paid him [under the FLSA]."  29 C.F.R. § 531.35.  Yet Plaintiffs assert, without any support, that the IRS mileage reimbursement rates are a substitute for factual pleadings regarding the nature of the "per mile" expenses they incurred, and based on those rates and Plaintiffs' own estimates about their average number of deliveries and distances they drove (Am. Compl. ¶¶ 84-86, 95-97, 106-108, 116-117), they incurred a violation of the full (but not tip credit) minimum wage.  This is legal conjecture.  It is not a substitute for factual pleading, and belies all common sense regarding a delivery employee's "actual" expenses.

The Amended Complaint does not contain any facts to render it plausible that that Named Plaintiff Lusk actually incurred mileage-related expenses of between $0.575 and $0.54 cents during employment (Am. Compl. ¶¶ 7, 84, 85), Named Plaintiff Council actually incurred mileage-related expenses of $0.575, $0.535 and $0.54 during employment (Am. Compl. ¶¶ 12, 95, 96), Named Plaintiff O'Brien actually incurred mileage-related expenses of $0.575 and $0.54 during employment (Am. Compl. ¶¶ 17, 106, 107), and Named Plaintiff Byroad actually incurred mileage-related expenses of $0.54 during employment  (Am. Compl. ¶¶, 21, 116, 117).  Even if Plaintiffs had adequately pled the IRS mileage reimbursement rates apply (which they have not), the Amended Complaint still does not allege sufficient facts that any of the Named Plaintiffs

---

[4] The FOH states only that as "an enforcement policy, the IRS standard business mileage rate found in IRS Publication 917, 'Business Use of a Car' may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes." FOH 30c15(a) (available at https://www.dol.gov/whd/FOH/index.htm) (last visited March 27, 2018).  It does not modify the requirement set forth in the CFR, nor could it given its status as subregulatory guidance.

incurred a minimum wage violation <u>in any given week</u>.  *See* Order at 5.  Again they offer conjecture: if the IRS rate applied, and Plaintiff drove a specific number of miles, and the total wage compensation did not cover such expenses, <u>and</u> no tip credit applies (or, tip income was still insufficient), then there would potentially be a minimum wage violation in that particular week.  Nowhere do they move their conjecture across the line to plausible factual allegations.

Named Plaintiff Byroad does not offer *any* such facts for a particular week.  His most specific minimum wage rate allegation is "[f]or example, in a workweek, Plaintiff Byroad *estimates* he earned an hourly rate of $5.00 for 40 hours totaling $200, 'additional wages' in the amount of $120, and 'charge tips' in the amount of $90.00[]" (Am. Compl. ¶ 120) (emphasis added).  This certainly "fail[s] to provide sufficient information in [the Amended Complaint] for a finder of fact to be able to determine [Byroad's] rate of pay *in any given week*."  Order at 5.

As for the remaining three Named Plaintiffs (Lusk, Council and O'Brien), the following chart demonstrates how the proposed amendments also fail to allege their rate of pay in any given week based on their expense theory:

| Named Plaintiff | Amended Complaint Paragraph | Week of | Base Hourly Rate | Hours | "Additional Wages" | "Charge Tips" | Actual Expenses Pled | Actual Hourly Rate |
|---|---|---|---|---|---|---|---|---|
| Lusk | ¶ 89 | 9/21/2015 to 9/27/2015 | $5.00 | 30.55 | $88.33 | $65.75 | Not Pled | Not Pled |
| Council | ¶ 100 | 12/26/16 to 1/1/17 | $5.00 | 21.9 | $94.68 | $31.25 | Not Pled | Not Pled |
| Council | ¶ 101 | 5/23/16 to 5/29/16 | $5.00 | 28.78 | $73.73 | $63.5 | Not Pled | Not Pled |
| O'Brien | ¶ 111 | 11/30/15 to 12/6/15 | $5.00 | 23.62 | $72.94 | $58.25 | Not Pled | Not Pled |
| O'Brien | ¶ 112 | 10/12/15 to 10/18/15 | $5.00 | 25.85 | $76.50 | $52.50 | Not Pled | Not Pled |

Accounting for additional wages, none of these weeks reflects an hourly wage below the FLSA minimum wage (or overtime worked). Plaintiffs speculate that their expenses reduced the wage below that level (and their bald assertion that no tip credit would apply). For these reasons, Plaintiffs' FLSA minimum wage claims must be dismissed and, having failed to plead adequately despite a second chance, this time with prejudice.

## C.   Plaintiffs' Additional Generalized Allegations Regarding Overtime Work Do Not Satisfy the *Lundy* Standard.

This Court dismissed Plaintiffs' FLSA overtime claims because the original Complaint failed to satisfy the Second Circuit overtime pleading standard under *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013), *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85 (2d Cir. 2013), and their progeny. *See generally* Order at 6-7. It found Named Plaintiffs' allegations that they worked in excess of 40 hours on "numerous occasions" without being paid properly "essentially the same as the allegation the Second Circuit found insufficient in *Dejesus*." *Id.* at 6. It also rejected Named Plaintiffs' attempt to distinguish *Dejesus* by focusing on their alleged improper overtime rate not hours because "[w]hile the issue raised by the complaint is indeed how Defendants calculated Named Plaintiffs' overtime rate of pay, it is axiomatic that Named Plaintiffs must plausibly allege that they worked compensable overtime before the issue of their rate of pay becomes relevant." *Id.* at 7. The proposed amendments do not cure the original pleading defects and the overtime claims are otherwise deficient.

The Amended Complaint does not contain any new allegations of specific weeks in which two of the four Named Plaintiffs, Council and Byroad, worked overtime hours. "In order to state an overtime claim under the FLSA, 'Plaintiffs must allege sufficient factual matter to state a plausible claim that they worked compensable overtime in a workweek longer than 40 hours.'" Order at 6 (*citing Lundy*, 711 F.3d at 114 (2d Cir. 2013)). Because Named Plaintiffs

Council and Byroad have not plausibly alleged (or even attempted to) overtime hours worked as this Court found they must, and, having failed to do so despite another chance to replead, their FLSA overtime claims must be dismissed with prejudice.  *Murray v. City of New York*, No.16-8072 (PKC) (S.D.N.Y. Aug. 16, 2017) (each named Plaintiff must plead his or her respective FLSA claims); *Rosario v. First Student Mgmt. LLC*, 247 F. Supp. 3d 560 (E.D. Pa. 2017) ("named plaintiffs in a putative FLSA collective action must sufficiently plead violations of the FLSA. Simply because FLSA collective actions have the potential to include thousands of members does not relieve each named plaintiff of its individual burden to state a legal claim for relief[]").

As for the two remaining Named Plaintiffs, Lusk and O'Brien, the Amended Complaint alleges that Named Plaintiff Lusk worked over 40 hours in a workweek "approximately twice a month during the initial six months of employment[,]" and Named Plaintiff O'Brien alleges that she worked over 40 hours in a workweek "approximately once a month[.]"  Amended Compl. ¶¶ 134, 137.  These estimates are no different from the "numerous occasions" Named Plaintiffs previously alleged working overtime hours, which this Court rejected as inadequate as a matter of law.  Order at 6.  Simply alleging overtime worked without identifying any given week is insufficient to state a plausible overtime claim as a matter of law.  *See*, *e.g.*, *Dejesus,* 726 F.3d at 90 (finding that a plaintiff cannot state a plausible overtime claim by "alleging overtime in 'some or all workweeks'"); *Smith v. Mastercraft Decorators, Inc.,* No. 09 Civ 579, 2011 U.S. Dist. LEXIS 125342, at *6-7 (W.D.N.Y. Oct. 25, 2011) (allegation that plaintiff "routinely" worked over 40 hours insufficient); *Serrano v. I. Hardware Distribs., Inc.,* No. 14-cv-2488 (PAC), 2015 U.S. Dist. LEXIS 97876, at *7-8 (S.D.N.Y. July 27, 2015) (allegations that plaintiffs "worked 'an average' of 62 and 60 hours per week" and "'often' worked over ten hours per day" without

receiving overtime "over a period of years" failed to state an overtime claim because plaintiffs did "not allege that they worked more than 40 hours in a 'given' work week[]").

### D. Even if Plaintiffs Lusk and O'Brien Have Satisfied the *Lundy* Standard (Which They Have Not), The Complaint Establishes That Their FLSA Rate Calculation Allegation Is Simply Erroneous.

Named Plaintiff Lusk alleges one (and just one) identifiable week of overtime work—the week of August 17, 2015 to August 23, 2015 (Am. Compl. ¶ 135). However, yet again, he does not offer any specifics about an alleged failure to include "delivery charges and/or . . . 'additional charges'" (Am. Compl. ¶¶ 130-135) in the regular rate, and dismissal is appropriate for this reason alone. *See, e.g.*, *Ennocenti v. Unisys Tech. Servs., LLC*, No. 12-cv-6367, 2012 U.S. Dist. LEXIS 159763 (W.D.N.Y. Nov. 7, 2012) (Telesca, J) (dismissing FLSA claims for, *inter alia*, failure to include specific information regarding alleged regular rate calculation claim).

Assuming, *arguendo*, Named Plaintiff Lusk has adequately pled an overtime claim in the first instance, his overtime claim still warrants dismissal on the record before the Court, because it is clear that the allegation simply is not true. Indeed, Named Plaintiffs already presented this Court with Mr. Lusk's paystub for the week of August 17, 2015 to August 23, 2015 with their motion for conditional certification (*see* Docket No. 8-21 at 3).[5] The paystub confirms that Named Plaintiff Lusk was paid $20.84 for 1.33 hours of overtime work that week, an effective overtime rate of $15.67 (more than *twice* the applicable $7.25 FLSA minimum wage rate).[6] The record is equally clear about why Named Plaintiff Lusk's overtime rate was $15.67 that week.

---

[5] Plaintiffs redacted Mr. Lusk's name from the paystub when they filed it with the Court. Insomnia submits that this document in the record is Mr. Lusk's paystub for the week of August 17, 2015 through August 23, 2015. In any case, this paystub is integral to the proposed Amended Complaint for the reasons discussed at fn. 7 *infra*.

[6] The allegation in the Amended Complaint fails to account for the fact (also in the record before the Court) that Insomnia included credit card tips in the overtime rate calculation. *Compare* Am. Compl. ¶ 135 *with* Docket No. 38-2, ¶¶ 3, 6.

Indeed, contrary to the unsubstantiated allegation parroted in the Amended Complaint ("the delivery charges and/or the 'additional wages' were not included in the regular rate used to calculate the overtime rate of pay for the weeks they worked over forty (40) hours[]") (Am. Compl. ¶ 133), Insomnia included all forms of remuneration in the overtime rate calculation, and the record so reflects. *See* Docket 38-2, ¶¶ 3, 6.

Named Plaintiff O'Brien's overtime allegation also cannot proceed because it is demonstrably false. She alleges overtime hours worked across two different Insomnia locations during one specific week—September 21, 2015 to September 27, 2015 (Amended Compl. ¶ 138). However, Named Plaintiff O'Brien did not work any overtime hours the week of September 21, 2015 to September 27, 2015, and she only worked at one Insomnia store, in Ypsilanti, Michigan, during her first two weeks of work.[7] *See* Declaration of Insomnia's Payroll and Onboarding Specialist, Katie Scheininger ("Scheininger Decl.") ¶¶ 1-5, 8. Rather, because

---

[7] Defendants generally are bound to accept Named Plaintiffs' factual allegations as true at the pre-answer stage. However, Defendants posit that consideration of extrinsic evidence concerning Named Plaintiff O'Brien's alleged overtime work the week of September 21, 2015 to September 27, 2015 and related documents are appropriate because they are integral to the proposed Amended Complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Int'l Audiotext Network v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (holding that a court may take a document into consideration without converting a motion to dismiss to a summary judgment motion, even if the document was not attached to the complaint, when said document is integral to the complaint.); *Marosan v. Trocaire Coll.*, No. 13-CV-00825A(F) (LGF), 2015 U.S. Dist. LEXIS 43082 at *25-*26 (W.D.N.Y. February 5, 2015) (considering collective bargaining agreement, termination letter, and administrative claim submitted by defendants on a motion to dismiss because they were incorporated by reference into the complaint, and thus motion to dismiss was not converted into motion for summary judgment). Consideration of extrinsic evidence is particularly appropriate here because of the substantial factual record already before the Court through briefing in connection with Named Plaintiffs' motion for conditional certification, which the Court denied as moot upon dismissal of the original Complaint. Consideration of extrinsic evidence is also appropriate because this Court did not permit Named Plaintiffs to file an Amended Complaint unconditionally. Instead, it directed Named Plaintiffs, if they chose, to file a motion for leave to file an amended complaint with their proposed amended pleadings so that, Defendants presume, this Court could evaluate the adequacy of the claims.

of Named Plaintiff O'Brien's submission of inaccurate direct deposit information upon hire, on the pay date October 2, 2015, Ms. O'Brien received straight time wages for 18.35 hours of work for the week ending September 20, 2015, and 31.37 hours of work for the week ending September 27, 2015.  *See* Scheininger Decl. ¶¶ 5-9 and Exhibits thereto.  Named Plaintiff O'Brien only worked 31.37 hours in the week for which she alleges overtime.  *Id.* at ¶ 8.

Accordingly, Named Plaintiffs Lusk and O'Brien have not pled any "factual matter to state a plausible claim that they worked compensable overtime in a workweek longer than 40 hours[]'" (*see* Order at 6 (*citing Lundy*, 711 F.3d 106, 114 (2d Cir. 2013)), Named Plaintiffs Council and Byroad have not even attempted to, and thus Plaintiffs' FLSA overtime claims should be dismissed, this time with prejudice.

## III.   EVEN IF THE COURT DETERMINES THAT PLAINTIFFS HAVE PLED AN FLSA CLAIM INDIVIDUALLY (WHICH THEY HAVE NOT), THE AMENDED COMPLAINT UTTERLY FAILS TO RENDER PLAUSIBLE PLAINTIFFS ALLEGATIONS REGARDING SIMULARLY SITUATEDNESS, AND ESTABLISHES THAT PLAINTIFFS ARE NOT SIMILARLY SITUATED.

Based on its deficient and extremely individualized allegations, the proposed Amended Complaint stills seeks to state a claim for a sweeping nationwide collective action.  Plaintiffs fail to allege facts showing that they are or could be similarly situated with the putative collective, which is a fatal pleading deficiency.  *St. Croix v. Genentech, Inc.*, No. 12-cv-891-T-33EAJ (VHC), 2012 U.S. Dist. LEXIS 86742 (M.D. Fla. June 22, 2012) (court granted defendant's motion to dismiss because plaintiff failed to "sufficiently allege the basis for a collective action on behalf of others similarly situated" under *Iqbal/Twombly* pleading standard).  The facts Plaintiffs do allege only serve to reinforce how granular and individualized the putative claim they assert is.

Under the FLSA, Plaintiffs must properly plead that they are similarly situated with the putative collective before a collective action is sustainable.  *See* 29 U.S.C. § 216(b) ("[a]n action

. . . may be obtained against an employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.").   They have not done so. Plaintiffs do not, for example, allege facts showing that the putative collective incurred similar expenses, drove similar vehicles or miles, or made a similar number of deliveries.   They plead no facts regarding putative collective members' respective hourly rates of pay (before even addressing expenses and/or tips), which, their proposed Amended Complaint makes clear, can vary substantially, impacting the likelihood, if any, that the worker's regular rate approached or fell below $7.25/hour.   They also conclusorily allege that "Defendants pay policy and practice was to exclude certain remuneration, such as the mandatory delivery charges and/or the 'additional wages' identifies on the paystubs, from the regular rate of pay (Am. Compl. ¶ 130). However, this is belied by the record before the Court.   *See*, *e.g.*, Docket No. 8-21 at 3; Docket No. 38-2, ¶¶ 3, 6.   Insomnia included all forms of remuneration for purposes of calculating the overtime rate.   *Id.*   Similarly, Plaintiffs again offer blanket allegations that putative collective members were not properly notified of the tip credit without any factual support (Am. Compl ¶¶ 123-129).

These conclusory allegations are insufficient under *Iqbal/Twombly* and the pleading standard in this Circuit, especially given the significant number of variables that would apply to each member of the putative collective on Plaintiffs' liability theories.   Drivers working for Insomnia received differing amounts of hourly, non-hourly, and tip compensation.   They drove different vehicles (*see* Docket No. 38-2 at 16-18) in different geographic locations and conditions, paid varying amounts for gas, made a varying number of deliveries and drove different mileage.   Named Plaintiffs' own scant allegations establish this variability, even as between each other.   *Compare* Am. Compl. ¶¶ 84, 85 *with* Am. Compl. ¶¶ 95, 96 *with* Am.

Compl. ¶¶ 106, 107 *with* Am. Compl. ¶¶ 116, 117.  Without any well-pled, factually supported allegations demonstrating that Named Plaintiffs have some relevant information regarding the putative collective and a "common policy *that violated the law*,"[8] their personal facts, deficient themselves for the reasons stated herein, cannot support a nationwide collective action.

**IV.**   **IF THE COURT PERMITS THE COLLECTIVE ACTION ALLEGATIONS TO PROCEED (WHICH IT SHOULD NOT), THE EXISTING CONSENTS STILL MUST BE STRICKEN BASED ON THE MANNER IN WHICH THEY WERE ELICITED AND THE CLEAR RECORD THAT THE PUTATIVE OPT-IN PLAINTIFFS DID NOT CONSENT TO OR CORROBORATE PLAINTIFFS' CURRENT PROPOSED ALLEGATIONS.**

In its decision dismissing the original Complaint, this Court found it need not reach Defendants' arguments concerning the defects in the Consent forms putative opt-in plaintiffs signed having dismissed Named Plaintiffs' FLSA claims.  Order at 8.  Defendants submit that it is appropriate for the Court to strike any existing Consents, especially because now, more than one year after many were signed, there still is no operative complaint, and the Court denied Plaintiffs' motion for conditional certification.  The only Complaint the putative opt-ins even arguably consented to join their claims to has been declared a nullity.  Docket No. 47.

A person who wishes to join a collective action filed under the FLSA must file a written consent to join the action.  29 U.S.C. § 216(b) ("[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").  "The plain text of [29 U.S.C.] § 256 provides that, for a plaintiff's action to be deemed commenced, he must file a written consent to join the collective action, even if he is a named plaintiff in the complaint." *Frye v. Baptist Memorial Hosp., Inc.,* No. 07-2708, 2011 U.S. Dist. LEXIS 45605, at *11-12 (W.D. Tenn. Apr.

---

[8] *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2009) (emphasis added).

27, 2011) (collecting cases); *Gonzalez v. El Acajutla Rest. Inc.*, No. 04-cv-1513 (JO), 2007 U.S. Dist. LEXIS 19690, at *14-15 (E.D.N.Y. Mar. 20, 2007).

At the outset of a putative collective action, courts are charged with monitoring the preparation and distribution of notice to ensure that it is accurate and informative. *See generally Hoffmann-La Roche v. Sperling*, 493 U.S. 165 (1989). *See also Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982) (once the suit is filed it is improper for counsel to communicate with potential plaintiffs without giving opposing counsel and the court the opportunity to verify the notice); *Chemi v. Champion Mortgage*, No. 05 Civ. 1238 (WHW), 2006 U.S. Dist. LEXIS 100917, at *23-29 (D.N.J. June 21, 2006) (use of website to solicit potential plaintiffs clearly violated the spirit of Section 216(b) and the Supreme Court's decision in *Hoffmann-La Roche*). Therefore, many courts hold that "outside the notice process supervised by the Court, plaintiffs' attorneys are not permitted to unilaterally send unsolicited notices regarding the case to putative FLSA class members not yet parties to an action which has not been conditionally certified by the Court." *Bouder v. Prudential Fin., Inc.*, No. 06 Civ. 4359 (DMC), 2007 U.S. Dist. LEXIS 83338, at *5 (D.N.J. Nov. 8, 2007); *Sperling*, 493 U.S. at 170-74 ("By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. . . . This procedure may avoid the need to cancel consents obtained in an improper manner.").

Counsel here has filed Consents for 87 putative "party plaintiffs" (Docket Nos. 3-4, 6-7) after an apparent letter-mailing campaign. *See* September 15, 2017 Declaration of William J. Anthony In Support of Defendants' Motion to Dismiss ("September 15, 2017 Anthony Dec."), Ex. D (letter from Plaintiffs' counsel to individual presumed to be Insomnia driver dated March 17, 2017 opening "You may be entitled to money"). These Consents state as follows:

> I consent to become a "party plaintiff," named, or a representative plaintiff in any
> Fair Labor Standards Act action for unpaid wages and related relief against my

employer(s), including Insomnia Cookies, and any related entity or person, on behalf of myself and other former and current employees of the employer(s).

I wish to preserve and pursue any claim that I may have to the greatest extent possible. Therefore, I expressly consent to the use of this consent form for purposes of making me a party plaintiff in any lawsuit and/or lawsuits that plaintiffs' attorneys have brought and/or may bring on behalf of myself and other employees alleged to be similarly situated.

I authorize the representative plaintiffs or plaintiffs' attorneys to file this consent with the Clerk of the Court. I hereby further authorize and designate the named plaintiffs to act on my behalf concerning the litigation, this investigation, consideration of settlement and attorneys' fees and costs, and all other matters pertaining to this lawsuit.

*See*, *e.g.*, Docket No. 7.

What this language completely fails to do is consent to join <u>this</u> action, as the statute requires. The language of the Consents – more properly located in a retainer agreement – purports to authorize counsel to file lawsuits against any number of unidentified employers, in any number of formats. Further, the Consents are internally contradictory: they both make the signer a purported "party plaintiff" or representative plaintiff (on the one hand), and at the same time delegate decision-making authority concerning their case to other "named plaintiffs" in an unidentified action. They literally purport to consent to representation by individuals who identities are unclear from the Consent and might – under the language of the Consent – not be known at the time of signing! This is especially true because this Court dismissed the original Complaint in this case (Docket No. 47), and the proposed pleadings in the Amended Complaint, which warrant dismissal for all of the reasons stated herein, did not exist at the time any of the 87 Consents were signed, so putative opt-ins could not have consented to join them.

The pleading process here—and rejection of the Complaint the opt-ins purported to join—highlights Counsel's apparent desire for an inappropriately amorphous, adaptable Consent where litigants are not individuals with individual claims, cases, and goals, but fungible puppets

who (Plaintiffs can argue) have joined any and all actions without regard for the allegations therein.  This is contrary to the purpose of the opt-in requirements of the FLSA, enacted to "limit[] private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions." *Moeck v. Gray Supply Corp.*, No. 03 Civ. 1950 (WGB), 2006 U.S. Dist. LEXIS 511, at *15 (D.N.J. Jan. 5, 2006).  It also violates notions of due process and notice.  From the Consent (now applied to a new distinct proposed amended pleading), Defendants have no ability to identify who the 87 opt-in Plaintiffs are suing, who they might sue, and who among them represents whom.  Indeed, when the Consents were signed, the signatories could not have known what action they were purportedly consenting to join.  How could they?  Now more than one year after some of the Consents were signed, there still is no operative complaint in this case.[9]  Again, it is highly likely given the date of the Consents that the opt-in Plaintiffs did not know the identities of the named Plaintiffs in this lawsuit at the time they signed Consents.

What is more, as Defendants have previously informed the Court, Counsel here created a publicly available website[10] inviting potential class members to join this case by completing the very Consent form (misleading for all the reasons stated above) Plaintiffs asked this Court to authorize dissemination of in connection with Plaintiffs' prior motion for conditional certification, which request was denied.  The website is still publically available despite the Court dismissing the original Complaint for failure to plead a claim under the FLSA and denying

---

[9] The Named Plaintiffs' Consents are dated: Justin Byroad (Consent dated March 21, 2017), Tia Council (Consent dated May 2, 2017), Skyer Lusk (Consent dated April 5, 2017) and Viktoria O'Brien (Consent dated April 7, 2017) (Docket No. 2). At least 50 of the Consents filed by opt-in plaintiffs <u>pre-date</u> the Council, Lusk and O'Brien Consents, and at least 11 of the Consents filed by opt-in plaintiffs <u>pre-date</u> all four of the Named Plaintiffs' Consents. *See* Docket No. 35 at 15 n.10.

[10] http://insomniacookiesclassaction.com/ (last visited March 27, 2018).

the motion for conditional certification as moot.  *See*, *e.g.*, *Jones v. Casey General Stores*, 517 F. Supp. 2d, 1080, 1088-89 (S.D. Iowa 2007) (pursuant to the Supreme Court's decision in *Hoffmann-La Roche*, where the "case ha[d] not yet been conditionally certified[]" any attempt at "one-sided, misleading communications with putative opt-in collective members" risked tainting the entire putative class).  That Plaintiffs have left this website online, despite the absence of a pending Complaint and denial of their conditional certification motion, highlights how misleading this unilateral notice campaign has been, and continues to usurp the Court's power to monitor the notice process.  *See generally* Docket Nos. 36-38.

This conduct is exactly what the Supreme Court cautioned against in *Hoffmann-La Roche*.  It is particularly egregious because the Court already found that Named Plaintiffs failed to adequately plead an FLSA claim, and dismissed their original Complaint and denied their motion for conditional certification.  Accordingly, it is inappropriate for Plaintiffs to continue soliciting large-scale participation and to specify any substantive terms of the notice or the purported consents.  The Consents they have unilaterally obtained and submitted, as set forth above, do not comply with the FLSA's opt-in requirement or provide any of the necessary specificity and clarity regarding the signer's status in <u>this</u> case.  This Court should strike the Consent forms pursuant to Rule 12(f).

## V.   PLAINTIFFS' COMPLAINT STILL FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A CLAIM AGAINST THE INDIVIDUAL DEFENDANT, MR. BERKOWITZ.[11]

In its decision dismissing the original Complaint, this Court also declined to reach Defendants' arguments concerning Plaintiffs' failure to state claims against individually named defendant Seth Berkowitz having dismissed Plaintiffs' FLSA claims on other grounds. Order at 8. The proposed Amended Complaint does not offer any new allegations about Mr. Berkowitz. Mr. Berkowitz is still an inappropriate party because Plaintiffs have not (and cannot) colorably allege facts rendering plausible the bald allegation he was their "employer." 29 U.S.C. § 203(d).

An entity or individual "employs" an individual if it "suffer[s] or permit[s]" that individual to work. 29 U.S.C. § 203(g). Pursuant to the FLSA, "the overarching concern is whether the alleged employer possessed the power to control the workers in question . . . with an eye to the 'economic reality' presented by the facts of each case." *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 139 (2d Cir. 1999); *see also Lopez v. Acme Am. Envtl. Co.*, No. 12 Civ. 511 (WHP), 2012 U.S. Dist. LEXIS 173290 at *3 (S.D.N.Y. Dec. 6, 2012). The economic reality test generally considers four relevant factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled the employee work schedules or schedules of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman*, 172 F.3d at 139 (*quoting Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)); *see also Lian Lin*, 2009 U.S. Dist. LEXIS 29779, at *7 (failure to "allege any facts regarding the positions held by the Individual Defendants or their power to

---

[11] The entirety of this section applies equally to Plaintiffs' claims under the NYLL. *See Xue Lian Lin v. Comprehensive Health Mgmt.*, No. 08 Civ. 6519 (PKC), 2009 U.S. Dist. LEXIS 29779, at *5-*6 (S.D.N.Y. Apr. 8, 2009). Defendants reserve – but need not address here – all other defenses regarding the legal deficiency of claims against Mr. Berkowitz under the NYLL. *See*, *e.g.*, *Stoganovic v. Dinolfo*, 461 N.Y.S.2d 121, 122-23 (4th Dep't 1983) (no direct individual liability under NYLL), *aff'd*, 61 N.Y.2d 812 (1984).

control plaintiffs' hours, wages, or other terms and conditions of employment" required dismissal of FLSA claims against such individual defendants); *Sampson v. MediSys Health Network, Inc.*, No. 10-cv-1342, 2012 U.S. Dist. LEXIS 103052, at *7-8 (E.D.N.Y. July 24, 2012).[12]  These factors help determine whether an entity or individual exercised formal control over an employee.

Analysis of whether individuals constitute employers within the meaning of the FLSA also hinges on the economic reality rather than technical concepts. *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013) (internal citation omitted); *see also Herman*, 172 F.3d at 139.  Courts applying the economic realities test have found that, "[g]enerally, corporate officers and owners held to be employers under the FLSA have had some direct contact with the plaintiff employee, such as *personally* supervising the employee's work, determining the employee's day-to-day work schedule or tasks, signing the employee's paycheck or directly hiring the employee." *Tracy v. NVR, Inc.*, 04 Civ. 6541L, 2009 U.S. Dist. LEXIS 90778, at *15 (W.D.N.Y. Sept. 30, 2009) (emphasis added), *aff'd in relevant part at* 667 F. Supp. 2d 244 (W.D.N.Y. 2009).

Consistent with the economic realities test, Judge Larimer in *Tracy* dismissed FLSA claims against three individual defendants – the Chairman, the CEO and the Vice-President of Human Resources – over plaintiffs' objection that they adequately had alleged that the individual defendants exercised the "requisite control" over employees.  The subject Complaint in *Tracy* (*see* September 15, 2017 Anthony Dec., Ex. B) was drafted by Plaintiffs' counsel here and contained substantially similar (and arguably more thoroughgoing) allegations concerning that Defendant's CEO and his alleged involvement in the pay practices at issue.  *Compare* September

---

[12]  Mr. Berkowitz does not satisfy any of these elements, and Plaintiffs allege no facts to the contrary, only generalized allegations regarding his executive role at Insomnia.  As discussed below, this is insufficient.

15, 2017 Anthony Dec., Ex. B ¶¶ 37-59 *with* Amended Compl. ¶¶ 50-60. The *Tracy* complaint and Plaintiffs' proposed Amended Complaint both suffer the same infirmities: they are conclusory, ostensibly "factual" allegations regarding theoretical operational control of a business and its different facets based on an executive title, pulled from the legal standard set forth in *Herman* and *Irizarry*, not from any factual information connecting the individual to the workers in question. *See also Sampson*, 2012 U.S. Dist. LEXIS 103052.[13]

The courts of the Southern District also are in agreement. For example., in *Pazos v. Le Bernardin Inc.*, No. 11 Civ. 8360 (RJS), (S.D.N.Y. Apr. 27, 2012), Judge Sullivan dismissed similarly conclusory claims under the FLSA against two individually-named restaurant owners after concluding the plaintiffs failed to sufficiently allege facts to satisfy the economic realities test. In granting the defendants' motion to dismiss, the Court ruled that, other than a conclusory reference to the individual defendants' "power to hire and fire" employees, there were "really no facts . . . indicat[ing] the degree or the amount of interaction or control that the individual defendants have over [the] individual plaintiffs."[14]

---

[13] The *Sampson* Court observed, addressing the plaintiffs' allegations that the individual defendants were high-ranking officers, that the plaintiffs failed to allege facts demonstrating that these individuals had "operational control" over the employees at the plaintiffs' alleged places of employment. *Id.* at *13-14. Further, the plaintiffs did not allege that the individual defendants "ever had any direct contact with them." *Id.* at *14. *See also Gill v. Acacia Network*, No. 13 Civ. 9088 (TPG), 2015 U.S. Dist. LEXIS 34009, at *17 (S.D.N.Y. Mar. 18, 2015) (allegations that "executive staff was 'responsible for hiring and firing and in control of all conditions affecting our employment and compensation'" did not contain "factual content" and could not "sustain plaintiffs' FLSA or state labor law claims"); *Peng Bai v. Fu Xing Zhuo*, No. 13 Civ. 5790 (ILG)(SMG), 2014 U.S. Dist. LEXIS 81173, at *10-11 (E.D.N.Y. June 13, 2014) ("allegations that [individual defendant] had the power to hire, fire, set wages, set work conditions, and maintain employment records are conclusory and inadequate to establish that Lin was an employer, as several courts in this circuit have held") (*citing Gisomme v. Healthex Corp.*, No. CV 13-2541, 2014 U.S. Dist. LEXIS 67588, at *4 (E.D.N.Y. May 15, 2014).

[14] A copy of Judge Sullivan's April 27, 2012 Order, as well as the pertinent portions of the underlying transcript from the oral argument during which the defendants' motion was granted, is attached to the September 15, 2017 Anthony Dec. as Ex. C. *See id.* at 8-9.

Similarly, in *Lian Lin*, Judge Castel found allegations similar to those asserted in the Complaint inadequate to nudge a complaint past a motion to dismiss. *Lian Lin*, 2009 U.S. Dist. LEXIS 29779, at *7-*8.   Employees of Comprehensive Health Management, Inc. ("CMHI") sued CMHI as well as various individual employees of CHMI, all as "employers" pursuant to the FLSA. *Id.* at *2.   The Court noted the complaint did not sufficiently allege the degree of control by each individual defendant over the "plaintiffs' hours, wages, or other terms and conditions of employment" to characterize them as "employers" pursuant to the FLSA. *Id.* at *7.

Notably, and despite a second bite at the apple to plead their claims, Plaintiffs still do *not* allege that they ever spoke with or had any direct interaction with Mr. Berkowitz or that Mr. Berkowitz actually set any of Plaintiffs' terms and conditions of employment. *See Sampson*, 2012 U.S. Dist. LEXIS 103052, at *12-*14; *Wolman v. Catholic Health Sys. of Long Island*, No. 10-cv-1326 (JS) (ETB), 2011 U.S. Dist. LEXIS 48223, at *3 (E.D.N.Y. May 5, 2011).   If Mr. Berkowitz hired or fired Plaintiffs, supervised or scheduled Plaintiffs, determined Plaintiffs' rate of pay, or maintained employment records for Plaintiffs, Plaintiffs should so claim in the Amended Complaint – but they do not.   They have simply named a high level executive as a party defendant, and glossed over the need to assert specific factual allegations by merely regurgitating the applicable legal test. *See*, *e.g.*, *Lian Lin*, 2009 U.S. Dist. LEXIS 29779, at *7 (dismissing complaint that "does not allege any facts regarding the positions held by the Individual Defendants or their power to control plaintiffs' hours, wages, or other terms and conditions of employment"); *Bravo v. Eastpoint Int'l, Inc.*, 99 Civ. 9474 (WK), 2001 U.S. Dist. LEXIS 3647, at *4-*5 (S.D.N.Y. Mar. 30, 2001) (dismissing FLSA claim against fashion designer Donna Karan because plaintiffs only alleged her status as owner and chairperson of employer company and failed to allege any facts establishing her "power to control the plaintiff

-23-

workers"). This pleading is no substitute for properly pled allegations that Mr. Berkowitz is an "employer" within the meaning of the FLSA – a prerequisite for proceeding against him. *See Lian Lin*, 2009 U.S. Dist. LEXIS 29779, at *5. Accordingly, all claims against Mr. Berkowitz should be dismissed with prejudice.

## VI.     THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS, AND THIS ACTION SHOULD BE DISMISSED WITH PREJUDICE.

Because Plaintiffs' proposed amended FLSA claims are subject to dismissal, this Court should again decline to exercise supplemental jurisdiction over Plaintiffs' alleged state law claims. *See* Order at 7-8 ('having determined that all of the federal claims set forth in the complaint are subject to dismissal, the Court declines to exercise pendent jurisdiction over Named Plaintiffs' state law claims."). Absent "'exceptional circumstances,' where federal claims are disposed of through Rule 12 or on summary judgment grounds federal courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06 Civ. 6497 (MAT), 2007 U.S. Dist. LEXIS 41834, at *15 (W.D.N.Y. June 8, 2007) (*quoting Walker v. Time Life Films, Inc*., 784 F.2d 44, 53 (2d Cir. 1986)). Factors to consider in assessing whether "exceptional circumstances" warrant the exercise of such jurisdiction include "(1) the length of time the matter has been pending before the federal court; (2) the proximity of the trial date; and (3) the predominance of issues of federal, as opposed to local concern." *Birch*, 2007 U.S. Dist. LEXIS 41834, at *16 (*citing McLearn v. Cowen & Co.*, 660 F.2d 845 (2d Cir. 1981)).

Such circumstances are not present here, where the case is still in its infancy. Even in FLSA cases proceeding to summary judgment after discovery, New York courts decline to exercise continued jurisdiction where summary judgment disposes of FLSA claims. *See*, *e.g.*, *Krumholz v. Vill. of Northport*, 873 F. Supp. 2d 481, 492 (E.D.N.Y. 2012) ("[T]he Court declines to retain jurisdiction over the remaining state law claims given the absence of any federal claim

that survives the summary judgment motion").  Lacking federal question jurisdiction, this Court should not consider the balance of Plaintiffs' proposed Amended Complaint and dismiss it without prejudice, as it has done before where FLSA claims were found wanting.  *Ennocenti*, 2012 U.S. Dist. LEXIS 159763 at *8.[15]

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that this Court should deny Plaintiffs' Motion to Amend the Complaint, dismiss, with prejudice, Plaintiffs' FLSA claims as stated in the First, Second and Third Causes of Action of the proposed Amended Complaint, and dismiss the balance of Plaintiffs' proposed Amended Complaint without prejudice to re-filing in the appropriate state court.  The purported Consents to Join filed to date should be stricken, and the claims against the individual Defendant, Mr. Berkowitz, should be dismissed, with prejudice.

Dated:  Albany, New York
        March 27, 2018

Respectfully submitted,

JACKSON LEWIS P.C.
*ATTORNEYS FOR DEFENDANTS*
677 Broadway, 9th Floor
Albany, New York 12207
Telephone: (518) 512-8700

By:

WILLIAM J. ANTHONY, ESQ.
NOEL P. TRIPP. ESQ.
DOUGLAS J. KLEIN, ESQ.

---

[15] Also because this case is still at its infancy and the FLSA claims are again subject to dismissal, Defendants again do not address other legal deficiencies in Plaintiffs' proposed pendent state law class claims.  *See, e.g., Glewwe v. Eastman Kodak Co.*, 05 Civ. 6462T, 2006 U.S. Dist. LEXIS 33449 at *11 (W.D.N.Y. May 25, 2006) (Telesca, J.) (finding dismissal of plaintiffs' pendent state law class claims appropriate prior to a class certification motion because common issues of law or fact do not predominate over the individual issues applicable to purported class members where "employees at issue were employed in several different states at several different locations subject to different terms and conditions, and different state laws[]" and "[d]ifferent remedies are available in each state, and the methods of overtime calculation vary from state to state.").