UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────

SKYLER LUSK, TIA COUNCIL, VIKTORIA
O'BRIEN, and JUSTIN BYROAD, *on
behalf of themselves and all other
employees similarly situated,*

                  Plaintiffs,

      -vs-

SERVE U BRANDS, INC., INSOMNIA
COOKIES, LLC, and SETH BERKOWITZ,

                Defendants.

**No. 6:17-cv-06451-MAT
DECISION AND ORDER**

─────────────────────────────

## I. INTRODUCTION

Named Plaintiffs Skyler Lusk ("Lusk"), Tia Council ("Council"), Viktoria O'Brien ("O'Brien"), and Justin Byroad ("Byroad") (collectively "Named Plaintiffs"), former delivery drivers for Defendant Insomnia Cookies, LLC ("Insomnia Cookies"), commenced the instant action on July 11, 2017, alleging violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.*, as well as violations of the state laws of New York, Michigan, and Indiana. Docket No. 1. Defendants filed a motion seeking dismissal of the complaint on September 15, 2017. Docket No. 35. On February 12, 2018, the Court entered a Decision and Order (the "February 12th Decision and Order") (Docket No. 47) granting Defendants' motion to dismiss. In particular, the Court found that Named Plaintiffs had failed to allege plausible claims for violations of the FLSA. The Court further found that, because Named Plaintiffs had not pled a viable federal claim, that it would

not be appropriate to exercise jurisdiction over Named Plaintiffs' state law claims. However, in the interests of justice, the Court afforded Named Plaintiffs an opportunity to file a motion seeking to amend their complaint and cure the defects identified by the Court.

Named Plaintiffs have now filed a motion for leave to file an amended complaint. Docket No. 48. Defendants oppose Named Plaintiffs' request, and have filed a cross-motion asking the Court to strike the Consents to Become a Party Plaintiff filed in connection with this matter. Docket Nos. 49-50. For the reasons discussed below, Named Plaintiffs' motion for leave to file an amended complaint is granted and Defendants' cross-motion to strike is denied.

## II. FACTUAL BACKGROUND

The factual background of this action is set forth in detail in the February 12th Decision and Order, familiarity with which is assumed for purposes of this Decision and Order. For purposes of the instant motion, the Court has summarized the relevant additional factual allegations set forth in Named Plaintiffs' proposed amended complaint below.

In the February 12th Decision and Order, the Court found that Named Plaintiffs had failed to state a plausible minimum wage claim under the FLSA because they had "failed to provide sufficient information in their complaint for a finder of fact to be able to

determine their rate of pay in any given work week." Docket No. 47 at 5. Accordingly, the Court explained, it was "impossible to conclude from the allegations in the complaint that Defendants failed to pay [Named Plaintiffs] the federally mandated minimum wage in any given week." *Id.* In response to the Court's holding, Named Plaintiffs have provided additional details about their rate of pay in the proposed amended complaint. In particular, Lusk alleges that for the workweek September 21, 2015 through September 27, 2015, he was paid an hourly rate of $5.00 for 32.28 hours, plus "additional wages" of $89.19 and "charge tips" of $85.00. Lusk further alleges that for the workweek March 7, 2016 through March 13, 2016, he was paid an hourly rate of $5.00 for 30.55 hours, plus "additional wages" of $88.33 and "charge tips" of $65.75.

The other Named Plaintiffs have included similar allegations in the proposed amended complaint. Council states that for the workweek December 21, 2016 through January 1, 2017, she was paid an hourly rate of $5.00 for 21.90 hours, "additional wages" of $94.68, and "charge tips" of $31.25, and that for the workweek May 23, 2016 through May 29, 2016, she was paid an hourly rate of $5.00 for 28.78 hours, "additional wages" of $75.73, and "charge tips" of $63.50. O'Brien alleges that for the workweek November 30, 2015 through December 6, 2015, she was paid an hourly rate of $5.00 for 23.62 hours, "additional wages" of $72.94, and "charge tips" of

$58.25, and that for the workweek October 12, 2015 to October 18, 2015, she was paid an hourly rate of $5.00 for 25.95 hours, "additional wages" of $76.50, and "charge tips" of $52.50. Byroad provides less specific information, but estimates that in a workweek he earned an hourly rate of $5.00 for 40 hours, "additional wages" of $120.00, and "charge tips" of $90.00.

Turning to the issue of overtime, in the February 12th Decision and Order, the Court found that Named Plaintiffs had failed to plead sufficient factual matter to state a plausible claim that they had worked compensable overtime in a given workweek. Named Plaintiffs Lusk and O'Brien have included in the proposed amended complaint additional factual allegations intended to remedy this shortcoming. Lusk alleges that for the workweek August 17, 2015 through August 23, 2015, he worked 41.33 hours, but was not appropriately compensated for his 1.33 hours of overtime work. In particular, Lusk claims that he was paid $5.00 per hour for his initial 40 hours, as well as "additional wages" of $115.62, and that he was paid at a rate of $9.375 for the remaining 1.33 hours. O'Brien alleges that for the workweek from September 21, 2015 through September 27, 2015, she worked 49.72 hours and was not paid at an overtime rate for any of these hours. Named Plaintiffs Council and Byroad have not alleged FLSA overtime claims.

**III. DISCUSSION**

    **A.    Named Plaintiffs' Motion for Leave to Amend**

        **1.    Legal Standard**

Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend shall be given freely "when justice so requires." Nevertheless, it remains "within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation omitted). In particular, the Court may deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). A proposed amendment is futile where it "fails to state a claim on which relief can be granted." *Krys v. Pigott*, 749 F.3d 117, 134 (2d Cir. 2014). "The adequacy of a proposed amended complaint to state a claim is to be judged by the same standards as those governing the adequacy of a filed pleading." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

A proposed amended complaint, like all complaints, "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint need not provide "detailed factual allegations," it nevertheless must assert "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The plaintiff must plead facts that "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (citations omitted). In deciding whether to grant leave to amend, the Court must accept as true all factual allegations in the proposed amended complaint, and must draw all reasonable inferences in favor of the nonmovant. *See Atwood v. Cohen & Slamowitz LLP*, 716 F. App'x 50, 52 (2d Cir. 2017).

### 2. The Proposed Amended Complaint Plausibly Alleges Violations of the FLSA

Applying the legal standards set forth above, the initial question the Court must determine is whether the proposed amended complaint plausibly states a claim for violation of the FLSA. For the reasons discussed below, the Court finds that Named Plaintiffs have plausibly alleged an FLSA minimum wage claim and that Named Plaintiffs Lusk and O'Brien have plausibly stated an FLSA overtime claim.

### i. Named Plaintiffs have Plausibly Alleged an FLSA Minimum Wage Claim

Named Plaintiffs wish to pursue an FLSA claim for failure to pay the federally mandated minimum wage. As the Court explained in the February 12th Decision and Order, to plausibly state an FLSA minimum wage claim, a complaint must allege that, during at least one particular week, "the average of the Plaintiffs' . . . wages was less than the federal minimum wage." *Hart v. Crab Addison, Inc.*, No. 13-CV-6458 CJS, 2014 WL 2865899, at *11 (W.D.N.Y. June 24, 2014). This is because "[u]nder what has become known as the *Klinghoffer* rule, taking its name from *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960), no minimum wage violation occurs so long as the total wage paid to an employee in any given workweek divided by the total hours worked in the workweek equals or exceeds the applicable minimum wage." *Id.* (internal quotation omitted).

Unlike the allegations in Named Plaintiffs' initial complaint, the allegations in the proposed amended complaint provide sufficient information necessary to calculate the Named Plaintiffs' rates of pay in a particular workweek. For example, Lusk alleges that for the workweek September 21, 2015 through September 27, 2015, he was paid an hourly rate of $5.00 for 32.28 hours, plus "additional wages" of $89.19 and "charge tips" of $85.00, for a total sum of $335.59. Lusk further alleges that, while he worked for Defendants, he performed 1-2 delivery trips per hour, with an

average distance of 10 miles round trip. Based on the IRS mileage reimbursement rate for 2015, Lusk therefore claims that he was entitled to reimbursement in a minimum amount of $5.75 per hour for this time period. Accordingly, Lusk alleges that for this workweek, he was paid at most only $4.65 per hour. Crediting these allegations as true, as the Court must at this stage of the proceedings, Lusk has plausibly alleged that he was paid less than the federally mandated minimum wage in a specific workweek. Similar calculations can be performed for the other Named Plaintiffs, and also show workweeks in which they were allegedly paid less than the minimum wage.

Defendants set forth several reasons why Named Plaintiffs' minimum wage allegations are allegedly deficient, none of which have merit. First, Defendants take issue with Named Plaintiffs' allegation that Defendants cannot offset their minimum wage obligation based on the "additional wages" paid, arguing that this allegation is an inaccurate legal conclusion and contravenes this Court's February 12th Decision and Order. However, and as discussed above, even taking into account the additional wages and charge tips paid to Named Plaintiffs, they have identified specific workweeks in which they were allegedly paid less than the federal minimum wage. Accordingly, the issue of whether the additional wages are rightly counted towards Defendants' payment obligations

does not ultimately impact the plausibility of Named Plaintiffs' minimum wage claims.

Moreover, while the Court did find that mandatory service charges and additional wages may count towards Defendants' minimum wage obligations, Named Plaintiffs's inclusion of their preferred legal theory in the proposed amended complaint does not render its factual allegations implausible. It is well-established that legal conclusions are not taken into account in assessing the plausibility of a pleading. *See, e.,g.*, *Smith v. Mastercraft Decorators, Inc.*, No. 09-CV-579S, 2011 WL 5191755, at *2 (W.D.N.Y. Oct. 31, 2011) (in assessing the sufficiency of a complaint, "conclusory allegations, labels, and legal conclusions . . . are identified and stripped away"). Moreover, "it is not uncommon for complaints to allege a number of legal theories which really do not fit the facts of the case," and "[g]iven the fact that at the outset of litigation it is often difficult to know which legal theory will be supported by the facts developed during discovery, counsel should be given some latitude in asserting a variety of legal theories so that a plaintiff with a valid claim is not prejudiced by counsel who puts the wrong legal label on that claim." *Am.-European Art Assocs., Inc. v. Moquay*, No. 93 CIV. 6793 (JSM), 1997 WL 13209, at *1 (S.D.N.Y. Jan. 14, 1997). However, Named Plaintiffs are reminded that in future motion practice, the

doctrine of law of the case will apply to the Court's prior holdings.

Defendants' second argument is that Named Plaintiffs' reliance on the IRS's mileage reimbursement rates is inappropriate, because it is not an accurate reflection of the actual vehicle-related expenses incurred by Named Plaintiffs. However, several other federal courts have rejected this precise argument. For example, in *Darrow v. WKRP Mgmt., LLC*, No. 09-CV-01613-CMA-BNB, 2011 WL 2174496 (D. Colo. June 3, 2011), the court considered an employee's claim that "his wages [were] reduced below the minimum wage [because] he [was] under-reimbursed for vehicle-related expenses." *Id*. at * 3. The *Darrow* court concluded that Plaintiff had reasonably estimated his vehicle-related expenses by relying on the "IRS business mileage reimbursement rate" and the " AAA estimate of the cost of running and operating a car," explaining that "FLSA plaintiffs can rely on estimates provided that there is evidence that the estimate is not an unreasonable approximation of the actual figure." *Id*. at *4. Similarly, in *Perrin v. Papa John's Int'l, Inc.*, 818 F. Supp. 2d 1146(E.D. Mo. 2011), the court found that the IRS's business mileage reimbursement rate was sufficient evidence of the reasonableness of the plaintiff's estimate of his vehicle-related expenses to plausibly state a minimum wage violation. *Id*. at 1149.

The Court is persuaded by the reasoning in *Darrow* and other similar cases. The IRS's business mileage reimbursement rate

provides a plausible basis for Named Plaintiffs' to estimate their vehicle-related expenses.  Moreover, at the pleading stage of an FLSA action, a plaintiff may rely on estimates of items such as hours worked and expenses incurred.  The Court therefore finds no merit to Defendants' objections to Named Plaintiffs' proposed amended claim for failure to pay the federally required minimum wage.

### ii. Named Plaintiffs Lusk and O'Brien have Plausibly Alleged an FLSA Overtime Claim

The Court next considers whether the proposed amended complaint plausibly states a claim for federal overtime violations. The Court notes as an initial matter that the proposed amended complaint contains overtime allegations related only to Named Plaintiffs Lusk and O'Brien, and that Named Plaintiffs Council and Byroad acknowledge in their reply memorandum that they "do not currently assert overtime claims."  Docket No. 54 at 18. Accordingly, the Court has limited its consideration to whether or not Named Plaintiffs Lusk and O'Brien have stated claims for failure to pay overtime that are plausible on their face.

As the Court explained in the February 12th Decision and Order, under applicable Second Circuit precedent, in order to state an overtime claim under the FLSA, "[Named] Plaintiffs must allege sufficient factual matter to state a plausible claim that they worked compensable overtime in a workweek longer than 40 hours." *Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106,

114 (2d Cir. 2013).  An allegation that a plaintiff worked more than 40 hours in "some or all weeks" without being paid an appropriate rate of compensation, which is what Named Plaintiffs had included in their original complaint, does not meet the plausibility standard.  *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013).

In the proposed amended complaint, Named Plaintiffs Lusk and O'Brien each identify a specific workweek in which they contend they worked more than 40 hours and were not paid an appropriate rate of overtime compensation.  Specifically, Lusk claims that Defendants improperly calculated his overtime rate of pay for the workweek he identifies, while O'Brien claims not to have been paid at an overtime rate at all for the work week she identifies.

Pursuant to the FLSA, employees are entitled to overtime pay "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207.  An employee's "regular rate" is "the hourly rate <u>actually paid</u> for the normal, non-overtime workweek." *Scott v. City of New York*, 592 F. Supp. 2d 475, 487 (S.D.N.Y. 2008) (internal quotation omitted and emphsasis added).  Where an employee provides "tools of the trade which will be used in or are specifically required for the performance of the employer's particular work," the cost of such tools of the trade must be taken into account in determining both the minimum and overtime wages required to be paid.  29 C.F.R. § 531.35*; see also*

*Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08 CIV. 3725

DC, 2010 WL 4159391, at *4 (S.D.N.Y. Sept. 30, 2010).

If employees are unlawfully paid less than minimum wage, their regular rate of pay is the statutory minimum. *See Hernandez v. Jrpac Inc.*, No. 14 CIV. 4176 (PAE), 2016 WL 3248493, at *32 (S.D.N.Y. June 9, 2016) (where delivery drivers' regular rates of pay fell below the minimum wage, "the delivery workers' regular rate of pay for the purposes of calculating the overtime pay they are due is the statutory minimum wage"); *see also Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 291 (S.D.N.Y. 2011) (regular rate cannot be lower than the statutory minimum).

The calculations that Lusk relies on to support his overtime claim fail to comport with the legal principles set forth above. Lusk claims that for the workweek August 17, 2015 through August 23, 2015, he worked 41.33 hours. Lusk further claims that he was paid $5.00 per hour for his initial 40 hours, as well as "additional wages" of $115.62, and that he was paid at a rate of $9.375 for the remaining 1.33 hours. According to Lusk, his regular rate should therefore have been calculated as $8.14 per hour and his overtime rate should have been $12.21 per hour.

Lusk's calculations in the proposed amended complaint fail to take into account his factual allegations regarding his actual rate of pay. As discussed above, Lusk affirmatively alleges that, taking into account the money he expended on vehicle-related

13

expenses and other "tools of the trade," he was paid sub-minimum wage for all hours that he worked for Defendants. For example, and as discussed above, for the work week September 21, 2015 through September 27, 2015, Lusk alleges he was paid at most $4.65 per hour. Because (accepting the allegations of the proposed amended complaint as true) Lusk's actual rate of pay was below the statutory minimum, in calculating his overtime rate of pay, the statutory minimum must be used as his regular rate.[1]

However, Lusk's miscalculations do not render his overtime claim implausible, because (again, accepting his allegations as true), Defendants failed to pay him one and a half times the federally mandated overtime rate in any event. In particular, Lusk claims that he was paid at an overtime rate of only $9.375, which is less than one and half times the federal minimum wage. Because this overtime rate is inadequate even taking into account Lusk's factual allegations regarding his regular rate of pay, the Court finds that Lusk's FLSA overtime claim is plausible when the proper legal analysis is applied. *See Royston v. Wells Fargo, N.A.*, No. 08 CIV. 8715, 2012 WL 12883773, at *2 (S.D.N.Y. Apr. 25, 2012)

---

[1]     While a federal plaintiff has "substantial leeway under Rule 8(e) to plead alternative, and even inconsistent, claims," he may not take inconsistent factual positions unless he is "legitimately . . . in doubt about the factual background or legal theories supporting the claims or defenses ." *Kwan v. Schlein*, 246 F.R.D. 447, 451 (S.D.N.Y. 2007) (internal quotations omitted). In this case, Lusk cannot plausibly purport to be in doubt about whether he expended the vehicle-related expenses he claims in the amended complaint, inasmuch as those facts are within his own knowledge. Accordingly, he cannot ignore those vehicle-related expenses in connection with his overtime claim.

(noting that the Court is not "limited, in [its] legal analysis, to considering the principles and theories articulated in the parties' memoranda").

Defendants argue that Lusk's paystub for the workweek August 17, 2015 through August 23, 2015 shows that he was in fact paid at an overtime rate of $15.67. Setting aside the propriety of considering such extrinsic evidence on a motion for leave to amend, Defendants' argument fails in any event to take into account Lusk's allegations regarding his vehicle-related expenses. As set forth above, an employee's expenditures on necessary tools of the trade must be accounted for in assessing both minimum wage and overtime claims. Here, Lusk has alleged that he spent at least $5.75 per hour in vehicle-related expenses in 2015. Deducting $5.75 from the $15.67 rate claimed by Defendants still results in an overtime rate that is less than one and one half times the federally mandated minimum wage. Defendants' argument therefore fails to demonstrate that Lusk should not be permitted to proceed with an FLSA overtime claim at this point in the proceedings.

Turning to O'Brien's claim, she alleges that for the workweek from September 21, 2015 through September 27, 2015, she worked 49.72 hours and was not paid at an overtime rate for any of them. Defendants contend that these allegations are factually inaccurate, and have submitted a declaration from their Payroll and Onboarding Specialist, Katie Scheininger, that states O'Brien actually worked

only 31.37 hours from September 21, 2015 to September 27, 2015. This factual dispute, which is based on submissions outside the pleadings, is not amenable to resolution by the Court on a motion for leave to amend. *See Santiago v. Steinhart*, No. 89 CIV. 2069 (RPP), 1993 WL 410402, at *2 (S.D.N.Y. Oct. 13, 1993) (leave to be amend should be granted where "the alleged futility [of the proposed amendments] is based on factual issues which are in dispute"). Accepting O'Brien's allegations as true, she has plausibly alleged that Defendants' failed to pay her overtime as required by the FLSA.

For the foregoing reasons, the Court concludes that the proposed amended complaint adequately alleges an FLSA overtime claim on behalf of Lusk and O'Brien. The Court therefore will permit Lusk and O'Brien's overtime claims to proceed at this time.

### 3. Defendants' Arguments Regarding the Sufficiency of the Collective Action Allegations are Premature

Defendants also argue that even if Named Plaintiffs have stated individual FLSA claims, the proposed amended complaint's allegations regarding "similarly situatedness" and the appropriateness of a collective action are improper and inadequate. Accordingly, Defendants ask the Court to find that this action cannot proceed on a collective basis.

The Court finds Defendants' arguments regarding the adequacy of Named Plaintiffs' collective action allegations premature. No

motion for certification of a collective action is currently pending before the Court, nor have Named Plaintiffs had the opportunity to make the "modest factual showing" required at the conditional certification phase. *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). Accordingly, "[a]lthough [Defendants'] raise[] significant questions about whether this case could . . . be maintained as a collective action, it would be premature to reach that question at this juncture." *Lamur v. Sunnyside Cmty. Servs., Inc.*, No. 11-CV-4439 CBA RLM, 2012 WL 3288770, at *5 (E.D.N.Y. Aug. 9, 2012) (declining to dismiss collective action claims at outset of litigation). If and when Named Plaintiffs seek certification of this matter as a collective action, Defendants will have the opportunity to fully litigate the merits of that request.

### 4. The Proposed Amended Complaint Adequately Alleges that Defendant Seth Berkowitz is Named Plaintiffs' Employer

Defendants next argue that the proposed amended complaint fails to plausibly allege that Defendant Seth Berkowitz ("Berkowitz") qualifies as an employer under the FLSA. The Court finds this argument meritless.

"To be held liable under the FLSA, a person must be an 'employer,' which § 3(d) of the statute defines broadly as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" *Herman v. RSR Sec. Servs. Ltd.*, 172

F.3d 132, 139 (2d Cir. 1999) (quoting 29 U.S.C. § 203(d)). "The Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of employer," and the Second Circuit has noted that "[a]bove and beyond the plain language, . . . the remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have "'the widest possible impact in the national economy.'" *Id.* (quoting *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984)).

With respect to "whether a given individual is or is not an employer," the Second Circuit has explained that "the overarching concern is whether the alleged employer possessed the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case." *Id.* (internal citations omitted). There are four factors a court considers in applying the "economic reality" test: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (quotation omitted). No factor standing alone is dispositive; instead, the totality of the circumstances must be taken into account. *Id.*

In this case, Named Plaintiffs allege that Berkowitz is the CEO of Defendants Serve U Brands, Inc. ("Serve U") and Insomnia Cookies. Named Plaintiffs further allege that Berkowitz: (1) has

18

the authority to control Insomnia Cookies' operations, including "functions relating to employment, human resources and payroll;" (2) was "actively involved in the creation and/or maintenance of the illegal policies complaint of in this case;" (3) "has the power to hire and fire employees, control the terms and conditions of their employment, and determine the rate and method of their pay;" and (4) has "financial control" over Serve U and Insomnia Cookies. Docket No. 48-3 at ¶¶ 50-52, 55-59.

Named Plaintiffs' allegations are sufficient, at this stage, to state a plausible FLSA claim against Berkowitz. Although Named Plaintiffs do not allege that they personally interacted with Berkowitz, the Second Circuit has made it clear that "[n]othing . . . in the FLSA . . . requires an individual [defendant] to have been personally complicit in FLSA violations." *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013). Instead, it is sufficient if an individual defendant has "operational control over employees," which "does not mean that the individual 'employer' must be responsible for managing plaintiff employees — or, indeed, that he or she must have directly come into contact with the plaintiffs, their workplaces, or their schedules." *Id*. In this case, Named Plaintiffs' allegations, taken as true, satisfy the standard for qualifying Berkowitz as an employer under the FLSA. *See Hinckley v. Seagate Hosp. Grp., LLC*, No. 16-CV-6118 CJS, 2016 WL 6524314, at *11 (W.D.N.Y. Nov. 3, 2016) (allegations that

individual was "primarily responsible for implementing business decisions . . ., including but not limited to decisions concerning company labor guidelines, budgets, and other financial controls" were "sufficiently factual to plausibly state that [the individual] is an employer"). Accordingly, the Court finds that Named Plaintiffs have plausibly stated FLSA claims against Berkowitz.

### 5. The Court will Exercise Supplemental Jurisdiction over the State Law Claims

Finally, the Court notes that Defendants ask the Court to decline to exercise supplemental jurisdiction over Named Plaintiffs' state law claims. However, because the Court finds that the proposed amended complaint adequately states claims under the FLSA for the reasons set forth above, there is no basis to decline to exercise supplemental jurisdiction. Defendants' request that the Court dismiss the state law claims for lack of jurisdiction is accordingly denied.

### B. Defendants' Cross-Motion to Strike

In addition to opposing Named Plaintiffs' motion for leave to amend, Defendants have filed a cross-motion asking the Court to strike the Consents to Become a Party Plaintiff (the "Consents") signed by Named Plaintiffs and others and filed in connection with this action. Defendants contend that the Consents fail to comply with the relevant provisions of the FLSA. Defendants further argue that Plaintiffs' counsel has improperly created a website and solicited opt-in plaintiffs for this action, thereby "usurp[ing]

the Court's power to monitor the notice process." Docket No. 50 at
25.

Pursuant to the FLSA, any individual wishing to become a
party plaintiff must give "consent in writing to become such a
party and such consent [must be] filed in the court in which such
action is brought." 29 U.S.C. § 216(b). "Both FLSA and relevant
case law require named plaintiffs to submit written consent to join
in a collective action, and this requirement is not satisfied by
the filing of the complaint alone." *D'Antuono v. C & G of Groton,
Inc.*, No. 3:11CV33 MRK, 2012 WL 1188197, at *2 (D. Conn. Apr. 9,
2012).

The FLSA does not dictate any particular form or content for
the written consent. *See id.* ("While it is clear that some
document in addition to the complaint must be filed, it is not
clear what form the written consent must take."). Moreover,
"[[w]ith respect to form, courts have shown considerable
flexibility as long as the signed document indicates consent to
join the lawsuit." *Manning v. Gold Belt Falcon, LLC*, 817 F. Supp.
2d 451, 454 (D.N.J. 2011); *see also Mendez v. The Radec Corp.*, 260
F.R.D. 38, 52 (W.D.N.Y. 2009) ("[C]ourts have generally not taken
a strict approach with regard to the form of the written
consent. . . . The statute itself does not mandate any particular
form, and in general, all that is required is a signed statement
indicating the plaintiff's intent, and consent, to participate as

a plaintiff in the collective action.*"); Perkins v. S. New England Tel. Co.,* No. CIV.A. 3:07-CV-967JC, 2009 WL 3754097, at *3 n.2 (D. Conn. Nov. 4, 2009) (noting that "a consent form need not take any specific form" and that "courts have generally accepted irregular consent forms where the signed document verifies the complaint, indicates a desire to have legal action taken to protect the party's rights, or states a desire to become a party plaintiff"). Here, Defendants contend that the Consents are invalid and should be stricken because they do not identify the specific action to which the signees are consenting to join. The Court finds this argument without merit. The purposes of the FLSA's consent requirement are "to put the Defendants on notice" and to "ensure that each plaintiff intends to participate in the case," *D'Antuono*, 2012 WL 1188197 at *2, and those purposes are fulfilled by the Consents in this case. Defendants are fully aware of the identities of the party plaintiffs, and the Consents expressly manifest the party plaintiffs' intent to participate in "any Fair Labor Standards Act action for unpaid wages and related relief against . . . Insomnia Cookies, and any related entity or person," (*see, e.g.,* Docket No. 2-1 at 1-4).

The Court is not persuaded by Defendants' argument that the FLSA requires the written consent to refer to a specific court or action. The Southern District of New York rejected a remarkably similar argument in *Soler v. G & U, Inc.*, 103 F.R.D. 69 (S.D.N.Y.

1984). In that case, the consents at issue provided that the signee "consent[ed] to be a party plaintiff in an action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., to secure any unpaid minimum wages, liquidated damages, attorney's fees, costs and other relief arising out of [his] employment in Orange County, New York, in 1978 and/or 1979." *Id*. at 76 n.12. The defendant argued that these consents failed to comply with the FLSA, but the court rejected that argument, explaining that "[a]lthough the consent to sue forms filed with the Court are general and do not name a specific defendant, the FLSA does not require this level of specificity." *Id*. at 76. The Court agrees with the reasoning in *Soler*. The FLSA requires only that an employee consent in writing to become a party plaintiff to an action. It does not dictate that the consent identify a particular court or case in order to be effective.

Moreover, Defendants' argument that a valid consent must relate to a specific operative complaint is belied by the plain language of the statute itself. The FLSA expressly anticipates that a party plaintiff's written consent may be filed contemporaneously with the complaint. *See* 29 U.S.C § 256(a) (stating that an FLSA action may be commenced by an individual claimant "on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date

in the court in which the action is brought"). Such consents would as a matter of course have been signed prior to the commencement of the action.

The Court also does not find that Plaintiffs' counsel has engaged in improper communications with potential opt-in plaintiffs. "In the context of Rule 23 class actions, the Supreme Court has held that parties or their counsel should not be required to obtain prior judicial approval before communicating in a pre-certification class action, except as needed to prevent serious misconduct." *Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338, 1342 (N.D. Ga. 2007) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 94-95 (1981)). "The smattering of lower courts to have addressed the issue [of pre-certification communications in the collective action context] have taken a similar approach to that outlined in Gulf Oil: relying upon their broad case management discretion to generally allow pre-notice communications while actively limiting misleading statements in such communications." *Id.*; *see also Piper v. RGIS Inventory Specialists, Inc.*, No. C-07-00032 (JCS), 2007 WL 1690887, at *7 (N.D. Cal. June 11, 2007) ("In general, pre-certification communications with potential collective action members are permitted unless there is a 'clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties.'") (quoting *Gulf Oil*, 452 U.S. at 94-95).

In this case, contrary to Defendants' arguments, the Court does not find that the information disseminated by Plaintiffs' counsel to potential opt-in plaintiffs is misleading or that "the precertification communications at issue warrant the need for a limitation on the speech of [Named] Plaintiffs and Plaintiffs' counsel." *Vogt v. Texas Instruments Inc.*, No. CIVA 3:05CV2244 L, 2006 WL 4660133, at *4 (N.D. Tex. Aug. 8, 2006) (prohibiting plaintiffs' counsel from distributing a flyer containing misleading information - specifically, a formula purporting to allow prospective plaintiffs to calculate their potential recovery). The website maintained by Plaintiffs' counsel in this case makes it clear that the Court has not yet authorized notice, that no liability determination has been made, and that there is no money available at this time. Defendants have failed to identify any information on the website or in Plaintiffs' counsel's communications that warrants interference by the Court.

For all the foregoing reasons, the Court denies Defendants' motion to strike. The Consents filed in this case are sufficient to comply with the requirements of the FLSA, and Defendants have failed to show that Plaintiffs' counsel engaged in improper or misleading communications with prospective opt-in plaintiffs.

**IV. CONCLUSION**

For the reasons set forth above, Named Plaintiffs' motion for leave to file an amended complaint (Docket No. 48) is granted.

Named Plaintiffs are instructed to file their amended complaint within 10 days of entry of this Decision and Order. Defendants' cross-motion to strike (Docket No. 49) is denied.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:    June 14, 2018
          Rochester, New York