UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SKYLER LUSK, TIA COUNCIL, VIKTORIA O'BRIEN, AND JUSTIN BYROAD, *on behalf of themselves and all other employees similarly situated,*

*Plaintiffs,*

v.

SERVE U BRANDS, INC., INSOMNIA COOKIES, LLC, AND SETH BERKOWITZ,

*Defendants.*

AMENDED CLASS AND COLLECTIVE
ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL

Civil Action No.
17-6451

Plaintiffs Skyler Lusk, Tia Council, Viktoria O'Brien, and Justin Byroad ("Named Plaintiffs"), on behalf themselves and all other persons similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Thomas & Solomon LLP, bring this class and collective action complaint against Serve U Brands, Insomnia Cookies, LLC, and Seth Berkowitz (collectively, "Defendants"), and allege as follows:

<u>NATURE OF ACTION</u>

1.      This lawsuit seeks to recover damages in the form of unpaid wages and pay as well as injunctive relief and declaratory relief on behalf of the Named Plaintiffs and similarly situated delivery drivers who work or have worked at Defendants' Insomnia Cookies locations.

2.      Named Plaintiffs Skyler Lusk, Tia Council, Viktoria O'Brien, and Justin Byroad, bring this action on behalf of themselves and all similarly situated current and former delivery drivers who elect to opt in to this action pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"), and in particular, the collective action provision of 29 U.S.C. § 216(b), for Defendants' failure to pay proper wages for all hours worked.

3.      Named Plaintiffs also bring this suit as a class action on behalf of themselves and similarly situated current and former delivery drivers pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy the violations of applicable state labor laws and regulations including, but not limited to: New York Labor Law § 191 *et seq.* ("NYLL"); NYLL § 196-d; NYLL § 663; NYLL § 195; New York State Department of Labor Regulations §§ 146-2.18, 146-2.19, 146-2.2, 142-2.2; Mich. Comp. Laws § 408.414, *et seq.*; and Indiana Minimum Wage Act ("MWL"), Ind. Code § 22-2-2-4, *et seq.*

## JURISDICTION AND VENUE

4.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343 (3) and (4) conferring original jurisdiction upon this Court over any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; under 28 U.S.C. § 1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and under 29 U.S.C. § 216(b).

5.      This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a) because Plaintiffs' state law allegations are related to and arise from the same core of operative facts as Plaintiffs' allegations for violations of the FLSA.

6.      Venue is appropriate in the Western District of New York since the allegations arose in this district, Defendants do business in this district, and Named Plaintiffs Lusk and Council reside in this district.

## THE PARTIES

### Named Plaintiffs

#### Skyler Lusk

7.      Named Plaintiff Skyler Lusk worked as an Insomnia Cookies delivery driver from approximately August 2015 through April 2016.

8.      Mr. Lusk worked as a delivery driver at the Insomnia Cookies located at 1333 Mt. Hope Avenue, Rochester, New York 14620.

9.      At all relevant times, Mr. Lusk was an employee of Defendants under the FLSA and NYLL.

10.     Mr. Lusk resides within this district in Monroe County.

11.     Mr. Lusk, along with other similarly situated employees, was subject to Defendants' policies underlying the claims stated herein.

#### Tia Council

12.     Named Plaintiff Tia Council worked as an Insomnia Cookies delivery driver from approximately September 2015 through May 1, 2017.

13.     Ms. Council worked as a delivery driver at the Insomnia Cookies located at 1333 Mt. Hope Avenue, Rochester, New York 14620.

14.     At all relevant times, Ms. Council was an employee of Defendants under the FLSA and NYLL.

15.     Ms. Council resides within this district in Monroe County.

16.     Ms. Council, along with other similarly situated employees, was subject to Defendants' policies underlying the claims stated herein.

### Viktoria O'Brien

17.     Named Plaintiff Viktoria O'Brien worked as an Insomnia Cookies delivery driver from approximately September 2015 through January 2016.

18.     Ms. O'Brien primarily worked at the Insomnia Cookies store located at 733 W. Cross Street, Ypsilanti, Michigan 48197, but also occasionally worked at the store located at 1229 S. University Avenue, Ann Arbor, Michigan 48104.

19.     At all relevant times, Ms. O'Brien was an employee of Defendants under the FLSA and Michigan State laws.

20.     Ms. O'Brien, along with other similarly situated employees, was subject to Defendants' policies underlying the claims stated herein.

### Justin Byroad

21.     Named Plaintiff Justin Byroad worked as an Insomnia Cookies delivery driver from approximately March 2016 through October 2016.

22.     Mr. Byroad worked at the Insomnia Cookies store located at 602 W. Stadium Avenue, West Lafayette, Indiana 47906.

23.     At all relevant times, Mr. Byroad was an employee of Defendants under the FLSA and Indiana State laws.

24.     Mr. Byroad, along with other similarly situated employees, was subject to Defendants' policies underlying the claims stated herein.

### Defendants

25.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the FLSA and relevant state law.

26.     At all relevant times to this action, Defendants were or have been an enterprise engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA.

27.     At all relevant times to this action, Defendants were covered employers within the meaning of the FLSA and relevant state law.

28.     Defendants' employees are engaged in interstate commerce, and their annual gross volume of sales made or business done exceeds $500,000 exclusive of excise taxes.

29.     During the course of their employment by Defendants, Plaintiffs handled goods, including perishable produce and other food and beverage products that moved in interstate commerce.

*Serve U Brands, Inc.*

30.     Serve U Brands, Inc. ("Serve U Brands") is a business corporation registered in New York with its principal place of business at 440 Park Avenue South, 14th Floor, New York, New York 10016.

31.     Serve U Brands is a hospitality group that owns and operates Insomnia Cookies.

32.     According to Insomnia Cookies' own website, Serve U Brands is the parent company of Insomnia Cookies.

33.     Serve U Brands and Insomnia Cookies share common management, including Chief Executive Officer ("CEO") Seth Berkowitz.

34.     Serve U Brands has the authority to and does, either directly or through its subsidiaries, oversee and make decisions concerning human resources and employment functions at Insomnia Cookies locations.

35.     For example, Serve U Brands issues the Employee Handbook provided to employees.

36.     Additionally, Serve U Brands, either directly or through its subsidiaries, creates and maintains the policies at issue.

37.     Defendant Serve U Brands is listed as Plaintiffs' employer on paystubs and W-2 forms.

38.     Therefore, Serve U Brands is an employer under the FLSA, NYLL, and other applicable state laws, of Plaintiffs and Class Members.

***Insomnia Cookies, LLC***

39.     Insomnia Cookies, LLC is a limited liability corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 440 Park Avenue South, 14th Floor, New York, New York 10016.

40.     In or about November 2016, Insomnia Cookies, LLC merged with Insomnia Cookies LLC, a limited liability corporation organized and existing under the laws of the State of Pennsylvania (hereinafter referred to as "Insomnia Cookies").

41.     Insomnia Cookies is a subsidiary of Serve U Brands which runs a chain of more than 100 Insomnia Cookies locations across the United States.

42.     Insomnia Cookies and Serve U Brands share common management, including CEO Seth Berkowitz.

43.     Insomnia Cookies, directly or in concert with others, oversees and makes decisions concerning human resources and employment functions at Insomnia Cookies locations.

44.     For example, Insomnia Cookies' website provides a standard paper and online application for potential employment across all of its locations.

45.     Further, Insomnia Cookies' website identifies job opportunities available across its locations.

46.     Additionally, Insomnia Cookies, either directly or indirectly through its affiliates, provides benefits to Plaintiffs and Class Members.

47.     Insomnia Cookies also has centralized training and call centers.

48.     Also, Insomnia Cookies, either directly or through its subsidiaries, creates and maintains the pay policies at issue.

49.     Thus, Insomnia Cookies is an employer under the FLSA, NYLL, and other applicable state laws, of Plaintiffs and Class Members.

*Seth Berkowitz*

50.     Defendant Seth Berkowitz is the founder and CEO of Insomnia Cookies.

51.     Defendant Seth Berkowitz is also the CEO of Serve U Brands.

52.     In his roles as CEO, Seth Berkowitz has operational control over Serve U Brands and Insomnia Cookies and over the activities of Plaintiffs and actively manages Serve U Brands and Insomnia Cookies.

53.     For example, Seth Berkowitz was responsible for the first retail Insomnia Cookies location, obtaining FDA approval, and finding angel investors.

54.     Further, Seth Berkowitz, in concert with others, is involved in the expansion of Insomnia Cookies' locations.

55.     At all relevant times, Seth Berkowitz, in concert with others, has the authority and does make decisions that concern Insomnia Cookies' operations, including functions relating to employment, human resources and payroll.

56.     Further, Seth Berkowitz has the authority to, and does, make decisions that concern the policies Insomnia Cookies adopts and the implementation of those policies.

57.     Due in part to his role as CEO, Mr. Berkowitz is actively involved in the creation and/or maintenance of the illegal policies complained of in this case.

58.     Defendant Berkowitz, in concert with others, has the power to hire and fire employees, control the terms and conditions of their employment, and determine the rate and method of their payment.

59.     In his role as CEO and founder, Defendant Berkowitz has financial control over Serve U Brands and Insomnia Cookies.

60.     Therefore, Seth Berkowitz is an employer under the FLSA, NYLL, and other applicable state laws, of Plaintiffs and Class Members.

## FACTS

61.     Defendants own and/or operate more than 100 Insomnia Cookies stores located across the United States, including in New York, Florida, Connecticut, Michigan, Ohio, Indiana, Pennsylvania, Virginia, Missouri, and Oklahoma.

62.      Insomnia Cookies store locations are typically located near college and university campuses.

63.     Insomnia Cookies offers cookies, cookie cakes, milk, and other similar products in the store, and via delivery.

64.     At various time periods as described herein, Plaintiffs are or were employed by Defendants as delivery drivers at their Insomnia Cookies store locations.

***Defendants' Policy of Failing to Pay Delivery Drivers Adequate Minimum Wages and Not Reimbursing Vehicle and/or Other Related Expenses Violates the FLSA, New York, Michigan, Indiana State Laws, and All Other Applicable State Laws.***

65.     This claim arises from Defendants' willful violation of the FLSA and relevant state laws for their failure to pay Named Plaintiffs and similarly situated delivery drivers' minimum wages.

### *Summary of Violations*

66.     Defendants regularly employ individuals as delivery drivers, whose job it is to deliver food items to Defendants' customers.  There are a number of ways in which Defendants fail to pay statutory minimum wages to their delivery drivers.

67.     In particular, in each workweek, Defendants' policy is to pay delivery drivers an hourly rate that less than the statutory minimum wage.

68.     In addition, in each workweek, Defendants' policy is to not reimburse delivery drivers for mileage and vehicle expenses which means that in every workweek, delivery drivers' pay is reduced even further below statutory minimum wage.

69.     Further, the other amounts included on paystubs, "additional wages" and "charge tips," cannot be used by Defendants to offset their minimum wage obligations, including because Defendants failed to provide delivery drivers with proper notice and/or because the law does not provide for such an offset.

70.     These policies are discussed in more detail below.

*Defendants Fail to Reimburse Delivery Drivers for Mileage and Other Vehicle Expenses*

71.     Pursuant to Defendants' policy, Named Plaintiffs and Class Members are not reimbursed for vehicle and/or other related expenses that are incurred while delivering food for Defendants, thus, reducing their hourly rate even further below federal minimum wage.

72.     For example, Defendants require delivery drivers to use their own vehicles to perform delivery services for Defendants.

73.     Defendants also require that the personal vehicles operated by their delivery drivers be safe, functioning, legally operated, and insured.

74.     Throughout the relevant period, Defendants required their delivery drivers to bear the costs associated with their vehicles, including costs for gasoline, vehicle depreciation, insurance, maintenance and repairs.

75.     For decades, the Internal Revenue Service ("IRS") has calculated and published a standard mileage reimbursement rate for businesses and employees to use in computing the minimum deductible costs of operating a vehicle for business purposes.

76.     The rates per mile set by the IRS for employees for the relevant period are:

| | |
|---|---|
| 2011 | $.51 (Jan. 1 – June 30) |
| 2011 | $.55 (July 1 – Dec. 31) |
| 2012 | $.555 |
| 2013 | $.565 |
| 2014 | $.56 |
| 2015 | $.575 |
| 2016 | $.54 |
| 2017 | $.535 |

77.     Nevertheless, Defendants uniformly failed to reimburse their drivers the reasonable, or actual, automobile expenses incurred by Defendants' delivery drivers in owning and operating their vehicles for Defendants' benefit.

78.     Despite the relative ease of tracking actual miles driven by its drivers, Defendants do not do so.

79.     In fact, Defendants fail to reimburse delivery drivers for the miles driven while working for Insomnia Cookies and delivering food to Defendants' customers.

80.     Because Defendants fail to reimburse delivery drivers for all miles driven and for all vehicle maintenance costs incurred during their shifts, the actual hourly rate received by Defendants' delivery drivers is less than the mandatory minimum wage.

***Defendants' Policies Reduced Plaintiffs' Pay Below Minimum Wage Each Workweek***

81.     During each week Plaintiff Lusk worked, he was paid $5.00 per hour, a rate below both the federal and state minimum wage rate.  Thus, in each workweek, Defendants failed to pay Plaintiff Lusk statutory minimum wage.

82.     For example, as a non-exhaustive list, Plaintiff Lusk was paid $5.00 per hour during the following workweeks: August 24, 2015 through August 30, 2015, September 21, 2015 through September 27, 2015, September 28, 2015 through October 4, 2015, November 16 through November 22, 2015, April 4, 2016 through April 10, 2016, and April 18, 2016 through April 24, 2016.

83.     In addition, consistent with their policy, Defendants also failed to track Plaintiff Lusk's mileage or reimburse him for his car related costs, which caused Lusk's hourly rate to drop even further below minimum wage in each workweek.

84.     During Plaintiff Lusk's employment by Defendants, Plaintiff Lusk experienced an average delivery trip (which included approximately 3 separate delivery stops) distance of 10 miles round trip. Using the IRS business mileage reimbursement rate between .575 and .54 for automobile expenses, every delivery trip decreased Plaintiff's wages by anywhere between $5.40 (.54 x 10) to $5.75 (.575 x 10).

85.     Throughout his employment, Plaintiff Lusk averaged approximately 1-2 delivery trips per hour.  Thus, depending on the IRS rate at the time, Lusk "kicked back" to Defendants at least approximately $5.40 per hour ($5.40 x 1 delivery trip per hour), which effectively means Plaintiff Lusk lost money by working for Insomnia Cookies since his wage rate was $5.00 per hour (and he was not paid the applicable minimum wage).

86.     For example, as a non-exhaustive list, Plaintiff Lusk was paid an hourly rate of $5.00 during workweeks August 24, 2015 through August 30, 2015, September 21, 2015 through September 27, 2015, September 28, 2015 through October 4, 2015, November 16 through November 22, 2015, April 4, 2016 through April 10, 2016, and April 18, 2016 through April 24, 2016, and when taking into account the unpaid mileage of approximately $5.40 per hour, Plaintiff Lusk lost money by working for Insomnia Cookies during those workweeks.

87.     As noted above, Defendants also cannot claim an offset from their minimum wage obligations based on "additional wages" or "charge tips" included on paystubs.

88.     However, even when those amounts are included in the hourly rate calculation, Defendants still failed to pay required minimum wages, as demonstrated by the non-exhaustive examples set forth below.

89.     For example, for the workweek September 21, 2015 through September 27, 2015, Plaintiff Lusk earned an hourly rate of $5.00 for 32.28 hours, "additional wages" in the amount of $89.19, and "charge tips" in the amount of $85.00.  However, even when those amounts are included in his hourly rate calculation, and taking into account the unpaid mileage, Plaintiff Lusk was still paid less than statutory minimum wage per hour.

90.     Further, for the workweek March 7, 2016 through March 13, 2016, Plaintiff Lusk earned an hourly rate of $5.00 for 30.55 hours, "additional wages" in the amount of $88.33, and "charge tips" in the amount of $65.75.  However, even when those amounts are included in his hourly rate calculation, and taking into account the unpaid mileage, Plaintiff Lusk was still paid less than statutory minimum wage per hour.

91.     Plaintiff Lusk's pay for the workweeks September 21, 2015 through September 27, 2015 and March 7, 2016 through March 13, 2016 are only two examples of the many workweeks when Defendants failed to satisfy their minimum wage obligations and is in no way an exhaustive list.

92.     Similarly, during each week Plaintiff Council worked, she was paid $5.00 per hour, a rate below both the federal and state minimum wage rate.  Thus, in each workweek, Defendants failed to pay Plaintiff Council statutory minimum wage.

93.     For example, as a non-exhaustive list, Plaintiff Council was paid $5.00 per hour during the following workweeks: September 7, 2015 through September 13, 2015, October 19, 2015 through October 25, 2015, November 2, 2015 through November 8, 2015, March 28, 2016 through April 3, 2016, and April 24, 2017 through April 30, 2017.

94.     In addition, consistent with their policy, Defendants also failed to track Plaintiff Council's mileage or reimburse her for her car related costs, which caused Council's hourly rate to drop even further below minimum wage in each workweek.

95.     During Plaintiff Council's employment by Defendants, Plaintiff Council experienced an average delivery trip (which included approximately 3 separate delivery stops) distance of 8 miles round trip. Using the IRS business mileage reimbursement rates of .575, .535, and .54 for automobile expenses, every delivery trip decreased Plaintiff's wages by anywhere from $4.28 (.535 x 8) to $4.60 (.575 x 8).

96.     Throughout her employment, Plaintiff Council averaged approximately 1-2 delivery trips per hour.  Thus, depending on the IRS rate at the time, Council "kicked back" to Defendants at least approximately $4.28 ($4.28 x 1 delivery trip per hour), which means that Plaintiff Council was effectively making around $.75 per hour (and she was not paid the applicable minimum wage).

97.     For example, as a non-exhaustive list, Plaintiff Council was paid an hourly rate of $5.00 during workweeks September 7, 2015 through September 13, 2015, October 19, 2015 through October 25, 2015, November 2, 2015 through November 8, 2015, March 28, 2016 through April 3, 2016, and April 24, 2017 through April 30, 2017, and when taking into account the unpaid mileage of approximately $4.28 per hour, Plaintiff Council was effectively making around $.75 per hour.

98.     As noted above, Defendants also cannot claim an offset from their minimum wage obligations based on "additional wages" or "charge tips" included on paystubs.

99.     However, even when those amounts are included in the hourly rate calculation, Defendants still failed to pay required minimum wages, as demonstrated by the non-exhaustive examples set forth below.

100.    For the workweek December 26, 2016 through January 1, 2017, Plaintiff Council earned an hourly rate of $5.00 for 21.90 hours, "additional wages" in the amount of $94.68, and "charge tips" in the amount of $31.25.  However, even when those amounts are included in her hourly rate calculation, and taking into account the unpaid mileage, Plaintiff Council was still paid less than statutory minimum wage per hour.

101.    Further, for the workweek May 23, 2016 through May 29, 2016, Plaintiff Council earned an hourly rate of $5.00 for 28.78 hours, "additional wages" in the amount of $75.73, and "charge tips" in the amount of $63.50.  However, even when those amounts are included in her hourly rate calculation, and taking into account the unpaid mileage, Plaintiff Council was still paid less than statutory minimum wage per hour.

102.    Plaintiff Council's pay for workweeks December 26, 2016 through January 1, 2017 and May 23, 2016 through May 29, 2016 are only two examples of the many weeks when Defendants failed to satisfy their minimum wage obligations and is in no way an exhaustive list.

103.    Additionally, during each week Plaintiff O'Brien worked as a delivery driver, she was paid $5.00 per hour, a rate below both the federal and state minimum wage rate.  Thus, in each workweek, Defendants failed to pay Plaintiff O'Brien statutory minimum wage.

104.    For example, as a non-exhaustive list, Plaintiff O'Brien was paid $5.00 per hour during the following workweeks: September 28, 2015 through October 4, 2015, November 9, 2015 through November 15, 2015, and November 23, 2015 through November 29, 2015.

105. In addition, consistent with their policy, Defendants also failed to track Plaintiff O'Brien's mileage or reimburse her for her car related costs, which caused O'Brien's hourly rate to drop even further below minimum wage in each workweek.

106. During Plaintiff O'Brien's employment by Defendants, Plaintiff O'Brien experienced an average delivery trip (which included approximately 3 separate delivery stops) distance of 10 miles round trip. Using the IRS business mileage reimbursement rate of between .575 and .54 for automobile expenses, every delivery trip decreased Plaintiff's wages by anywhere between $5.40 (.54 x 10) to $5.75 (.575 x 10).

107. Throughout her employment, Plaintiff O'Brien averaged approximately 1-2 delivery trips per hour. Thus, depending on the IRS rate at the time, O'Brien "kicked back" to Defendants at least approximately $5.40 ($5.40 x 1 delivery trips per hour), which effectively means Plaintiff O'Brien lost money by working for Insomnia Cookies since her wage rate was $5.00 per hour (and she was not paid the applicable minimum wage).

108. For example, as a non-exhaustive list, Plaintiff O'Brien was paid an hourly rate of $5.00 during workweeks September 28, 2015 through October 4, 2015, November 9, 2015 through November 15, 2015, and November 23, 2015 through November 29, 2015, and when taking into account the unpaid mileage of approximately $5.40 per hour, Plaintiff O'Brien lost money by working for Insomnia Cookies during those workweeks.

109. As noted above, Defendants also cannot claim an offset from their minimum wage obligations based on "additional wages" or "charge tips" included on paystubs.

110. However, even when those amounts are included in the hourly rate calculation, Defendants still failed to pay required minimum wages, as demonstrated by the non-exhaustive examples set forth below.

111.    For example, for the workweek November 30, 2015 through December 6, 2015, Plaintiff O'Brien earned an hourly rate of $5.00 for 23.62 hours, "additional wages" in the amount of $72.94, and "charge tips" in the amount of $58.25.  However, even when those amounts are included in her hourly rate calculation, and taking into account the unpaid mileage, Plaintiff O'Brien was still paid less than statutory minimum wage per hour.

112.    Further, for the workweek October 12, 2015 through October 18, 2015, Plaintiff O'Brien earned an hourly rate of $5.00 for 25.95 hours, "additional wages" in the amount of $76.50, and "charge tips" in the amount of $52.50.  However, even when those amounts are included in her hourly rate calculation, and taking into account the unpaid mileage, Plaintiff O'Brien was still paid less than statutory minimum wage per hour.

113.    Plaintiff O'Brien's pay for workweeks October 12, 2015 through October 18, 2015 and November 30, 2015 through December 6, 2015 are only two examples of the many weeks when Defendants failed to satisfy their minimum wage obligations and is in no way an exhaustive list.

114.    During each week worked Plaintiff Byroad worked, he was paid $5.00 per hour, a rate below both the federal and state minimum wage rate.  Thus, Defendants failed to pay Plaintiff Byroad statutory minimum wage.

115.    In addition, consistent with their policy, Defendants also failed to track Plaintiff Byroad's mileage or reimburse him for his car related costs, which caused Byroad's hourly rate to drop even further below minimum wage.

116.    During Plaintiff Byroad's employment by Defendants, Plaintiff Byroad experienced an average delivery trip (which included approximately 3 separate delivery stops) distance of 5 miles round trip. Using the IRS business mileage reimbursement rate of .54 for

automobile expenses, every delivery trip decreased Plaintiff's wages by approximately $2.70 (.54 x 5).

117.    Throughout his employment, Plaintiff Byroad averaged approximately 2-3 delivery trips per hour.  Thus, depending on the IRS rate at the time, Plaintiff Byroad "kicked back" to Defendants at least approximately $ 5.40 ($2.70 x 2 delivery trip per hour) which effectively means Plaintiff Byroad lost money by working for Insomnia Cookies since his wage rate was $5.00 per hour (and was not paid the applicable minimum wage).

118.    Defendants also cannot claim an offset from their minimum wage obligations based on "additional wages" or "charge tips" included on paystubs.

119.    However, even when those amounts are included in the hourly rate calculation, Defendants still failed to pay required minimum wages, as demonstrated by the example below.

120.    For example, in a workweek, Plaintiff Byroad estimates he earned an hourly rate of $5.00 for 40 hours totaling $200.00, "additional wages" in the amount of $120.00, and "charge tips" in the amount of $90.00.  However, even when those amounts are included in his hourly rate calculation, and taking into account the unpaid mileage, Plaintiff Byroad was still paid less than statutory minimum wage per hour.

121.    In addition, pursuant to Defendants' policy, Named Plaintiffs and Class Members were also not reimbursed for other "tools of the trade" necessary to complete the job. For instance, Plaintiffs and Class Members were not reimbursed for cell phone usage, even though they were required to download and use the Insomnia App while making deliveries. Further, Named Plaintiffs and Class Members were also not reimbursed for metered parking needed to complete their deliveries.

122.    The effect of Defendants' policy was that Named Plaintiffs and Class Members were paid below federal minimum wage in part because of the "kick-backs" Defendants received.

***Defendants Violated the FLSA by Failing to Inform Employees of the Tip Credit Provisions.***

123.    This claim arises from Defendants' willful violation of the FLSA, 29 U.S.C. § 203(m), for failing to pay Plaintiffs Lusk, Council, O'Brien, Byroad, and similarly situated employees, their earned minimum wages.

124.    Defendants have a practice of paying Plaintiffs Lusk, Council, O'Brien, Byroad, and Class Members, a subminimum wage (and not reimbursing for car costs and/or other related expenses) even though Defendants are not eligible to avail itself of the federal tipped minimum rate, FLSA, 29 U.S.C. § 203(m).

125.    In order for Defendants to be eligible for a tip credit under federal law, they must have (1) informed the tipped employee of statutory requirements related to the tip credit; and (2) all tips received by such employee must be retained by the employee or among employees who customarily and regularly receive tips.

126.    Defendants failed to satisfy the first requirement and therefore is not eligible for the tip credit available under 29 U.S.C. § 203(m).

127.    Despite paying employees subminimum wages, Defendants failed to inform Named Plaintiffs and similarly situated employees of the tip credit provisions as required under federal law.

128.    In failing to inform Plaintiffs Lusk, Council, O'Brien, Byroad, and similarly situated employees, of the tip credit provisions, Defendants are not eligible to avail itself of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. § 203(m).

129.    Because Plaintiffs Lusk, Council, O'Brien, Byroad, and those similarly situated employees, were all deprived of minimum wage payments by the Defendants' policy, as described above, Plaintiffs are similarly situated to each other pursuant to 29 U.S.C. § 216(b).

***Defendants Violated the FLSA by Improperly Calculating the Regular Rate Used to Calculate the Overtime Rate of Pay.***

130.    Defendants' pay policy and practice was to exclude certain remuneration, such as the mandatory delivery charges and/or the "additional wages" identified on the paystubs, from the regular rate used to calculate the overtime rate of pay.

131.    As a result of this pay policy and practice, Named Plaintiffs Lusk, O'Brien, and similarly situated employees, were not properly compensated for overtime worked in excess forty (40) hours in a workweek in violation of the FLSA.

132.    On numerous occasions throughout their employment, including during the three (3) years preceding the filing of this action, Named Plaintiffs Lusk and O'Brien worked over forty (40) hours in a workweek, thus entitling them to overtime pay at time and one half their regular rate of pay.

133.    However, the delivery charges and/or the "additional charges" were not included in the regular rate used to calculate the overtime rate of pay for weeks they worked over forty (40) hours.

134.    Without the benefit of reviewing all of his time and pay records, Mr. Lusk estimates that he worked over 40 hours in a workweek approximately twice a month during his initial six months of employment, thus entitling him to overtime pay at time and one half his regular rate of pay.  On average, in the weeks that he worked overtime, Plaintiff Lusk estimates he worked approximately 42 to 46 hours.  Further, during each of the weeks in which Plaintiff Lusk worked in excess of 40 hours in a workweek, Plaintiff Lusk also received a portion of the

delivery charge and/or the "additional charges," which were not included in the regular rate calculations.

135.    For instance, during the workweek August 17, 2015 through August 23, 2015, Plaintiff Lusk worked a total of 41.33 hours.  The paystub reflects that the initial 40 hours were paid at a rate of $5.00 per hour, with the overtime pay being paid at a rate of $9.375 for the remaining 1.33 hours, totaling $220.84.  When adding the "additional wages" of $115.62 to the $220.84 in hourly pay, Plaintiff Lusk made approximately $336.46.  Then, dividing the total $336.46 by his 41.33 hours, Plaintiff Lusk's regular rate would be $8.14, and his overtime rate would be $12.21 ($8.14 x 1.5) instead of the $9.375 rate reflected on his paystub.

136.    Plaintiff Lusk's pay during the workweek August 17, 2015 through August 23, 2015 is only one example of his overtime rate not being calculated properly and is in no way an exhaustive list.

137.    Without the benefit of reviewing all of his time and pay records, Ms. O'Brien estimates that she worked over 40 hours in a workweek approximately once a month, thus entitling her to overtime pay at time and one half her regular rate of pay.  On average, in the weeks that she worked overtime, Plaintiff O'Brien estimates she worked an additional shift of approximately 7 hours.  Further, during each of the weeks in which Plaintiff O'Brien worked in excess of 40 hours in a workweek, Plaintiff O'Brien also received a portion of the delivery charge and/or the "additional charges" which were not included in the regular rate calculations.

138.    As an example, during workweek September 21, 2015 through September 27, 2015, Ms. O'Brien received two separate paychecks, for her work at two different locations, which together totaled 49.72 hours.  The paystubs reflect that the 49.72 hours (paid across two paystubs) were paid at a rate of $5.00 per hour, totaling $248.60.  When adding the

"additional wages" of $136.50 to the $248.60 in hourly pay, Plaintiff O'Brien made approximately $385.10.   When dividing the total $385.10 by her 49.72 hours, Plaintiff O'Brien's regular rate would be $7.75, and her overtime rate would be $11.62 ($7.75 x 1.5), instead of the $5.00 per hour she received.

139.   Plaintiff O'Brien's pay during the workweek September 21, 2015 through September 27, 2015 is only one example of her overtime rate not being calculated properly and is in no way an exhaustive list.

140.   The pay and timekeeping records Defendants are required to maintain for Named Plaintiffs Lusk and O'Brien will show additional particular workweeks in which Named Plaintiffs Lusk and O'Brien worked more than forty (40) hours but Defendants failed to properly include the mandatory delivery charge and/or the "additional wages" identified on the paystubs in their regular rate of pay used to calculate the overtime rate.

141.   Because mandatory service charges are not considered tips under the FLSA, and the total compensation received by an employee is clearly intended to be included, Defendants' failure to include these remunerations in the regular rate of pay used to calculate the overtime rate is a violation of the FLSA's overtime provisions.

142.   Defendants' failure to include all remuneration in the regular rate of pay used to calculate the overtime rate is a pay policy that applies to the Named Plaintiffs and similarly situated employees.

143.   Defendants' failure to pay overtime as required by the FLSA was willful.

144.   As a result of Defendants' unlawful pay policies and practices as described herein, Named Plaintiffs, similarly situated employees and the Class suffered a loss of wages.

***Defendants Violated NYLL by Paying Subminimum Wages to Named Plaintiffs Lusk, Council.***

145.    This claim arises from Defendants' willful violation of the NYLL, New York Minimum Wage Act, Article 19, § 650 *et seq*., for Defendants' failure to pay Plaintiffs Lusk, Council, and similarly situated employees, their earned minimum wages.

146.    Defendants failed to provide written notice of the tip credit or allowance to Named Plaintiffs Lusk, Council, and similarly situated employees, as required under New York State law.

147.    At all relevant times relevant to the litigation, Defendants did not comply with the NYLL's tip credit provision and the supporting New York State Department of Labor Regulations, including, but not limited to 12 N.Y.C.R.R. § 146.2-2.

148.    Accordingly, Defendants are not entitled to pay Plaintiffs Lusk, Council, and those similarly situated delivery driver employees, subminimum wages under the NYLL.

149.    Therefore, such violations occurred in each workweek in which Plaintiffs Lusk, Council, and those similarly situated employees, worked.

150.    The books and records of Defendants are material to the action as they disclose certain of the hours worked by each employee and the rate of pay for that work.

151.    Defendants violated the NYLL by failing to compensate Plaintiffs Lusk, Council, and the similarly situated employees, consistent with the minimum wage provisions.

152.    Plaintiffs are also committed to getting an injunction to prevent Defendants from continuing to engage in these violations.

***Defendants Violated Michigan Law by Paying Subminimum Wages to Named Plaintiff O'Brien and Class Members.***

153.    This claim arises from Defendants' willful violation of Michigan law, M.C.L.A. 408.414d, for Defendants' failure to pay Plaintiff O'Brien and similarly situated employees,

their earned minimum wages.

154.   Defendants failed to provide notice of the tip credit or allowance to Named Plaintiff O'Brien, and similarly situated employees, as required under Michigan State law.

155.   At all relevant times, Defendants did not comply with Michigan's tip credit provision.

156.   Accordingly, Defendants are not entitled to pay Plaintiff O'Brien, and those similarly situated delivery drivers, subminimum wages under Michigan State law.

157.   Therefore, such violations occurred in each workweek in which Plaintiffs O'Brien, and those similarly situated employees, worked.

158.   The books and records of Defendants are material to the action as they disclose certain of the hours worked by each employee and the rate of pay for that work.

159.   Defendants violated the Michigan State law by failing to compensate Plaintiff O'Brien, and the similarly situated employees, consistent with the minimum wage provisions.

160.   Plaintiffs are also committed to getting an injunction to prevent Defendants from continuing to engage in these violations.

***Defendants Illegally Retained Mandatory Delivery Charges Collected From Customers in Violation of New York Law.***

161.   This claim arises from Defendants' willful violation of NYLL Article 6 § 196-d.

162.   NYLL Article 6 § 196-d provides that an employer may not "demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

163.   New York State Department of Labor Regulation § 146-2.19(a) requires that a charge for administration "be clearly identified as such and customers shall be notified that the charge is not a gratuity or tip."

164. Further, 12 N.Y.C.R.R. § 146-2.19(b) provides that "[t]he employer has the burden of demonstrating, by clear and convincing evidence, that the notification was sufficient to ensure that a reasonable customer would understand that such charge was not purported to be a gratuity."

165. 12 N.Y.C.R.R. § 146-2.19(c) sets forth what an employer needs to do in order to provide adequate notification to customers. For example, the regulations state that a statement shall be included in the contract or agreement with the customer, as well as on any menus and bills, that the charge is for administration, and not purported to be a gratuity, and will not be distributed to employees who provided service. These statements must use ordinary language in font similar to surrounding text, but no smaller than 12-point font.

166. Defendants have a policy of charging their customers a delivery charge for the delivery of food items performed by Defendants' delivery drivers.

167. Defendants retain a portion of charge for delivery and do not remit or pass the entirety of the charge to the delivery drivers.

168. When Defendants' customers place delivery orders using Defendants' website, the above-mentioned service charge is represented as a charge for delivery.

169. Customers' receipts fail to notify customers that the automatic delivery charge is not distributed in its entirety to employees who provided the service.

170. It is not Defendants' policy to routinely inform customers that the delivery charge is retained in part by Defendants and not paid fully to Defendants' delivery drivers.

171. Defendants' customers can reasonably believe that the service charge for delivery is a gratuity paid to Defendants' delivery drivers and that they should tip the drivers less, or forego a tip entirely.

172.   As a result of Defendants' illegal delivery charge policy, Named Plaintiffs and the Class are owed the gratuities illegally retained by Defendants.

**Defendants Violated NYLL by Paying Subminimum Wages to Named Plaintiffs Lusk, Council, and Similarly Situated Delivery Drivers.**

173.   This claim arises from Defendants' willful violation of the NYLL, New York Minimum Wage Act, Article 19, § 650 *et seq.*, for Defendants' failure to pay Plaintiffs Lusk, Council, and similarly situated delivery drivers, their earned minimum wages.

174.   Defendants have a practice of paying Plaintiffs Lusk, Council, and those similarly situated delivery drivers, a subminimum wage even though Defendants retain a portion of the mandatory charge added to customers' bills for delivery orders.

175.   However, Defendants cannot pay Plaintiffs a subminimum wage because a violation of "N.Y. Lab. Law § 196-d itself constitutes an independent and sufficient reason to find that defendants are not entitled to a tip credit." *Copantitla v. Fiskardo Estiatorio Inc.,* 788 F. Supp. 2d 253, 290-91 (S.D.N.Y. 2011) (internal citation omitted).

176.   Accordingly, Defendants are not entitled to pay Plaintiffs Lusk, Council, and similarly situated delivery drivers, subminimum wages under the NYLL.

177.   Therefore, such violations occurred in each workweek in which Plaintiffs Lusk, Council, and those similarly situated delivery drivers, worked.

178.   The books and records of Defendants are material to the action as they disclose the hours worked by each employee and the rate of pay for that work.

179.   Defendants violated the NYLL by failing to compensate Plaintiffs Lusk, Council, and similarly situated delivery drivers, consistent with the minimum wage provisions.

180.   Plaintiffs are also committed to getting an injunction to prevent Defendants from continuing to engage in these violations.

*Defendants Violated the NYLL by Providing an Improper Wage Notice.*

181.    Since the enactment of the Wage Theft Prevention Act ("WTPA") in April 2011 through February 2015, pursuant to NYLL § 195, Defendants were required to provide Class Members in New York with a yearly notice, at the time of hiring when newly hired, and on or before February first of each subsequent year of employment, containing certain required information including the employee's rate of pay, whether the employer intends to claim allowances, and the overtime rate of pay, if the employee is subject to overtime requirements.

182.    Beginning in February 2015, the requirement to provide employees with a yearly notice was eliminated but the requirement of providing a notice at the time of hiring remained.

183.    Defendants failed to provide Named Plaintiffs Lusk, Council, and Class Members, with any wage notices containing their rate of pay, allowances, or overtime rate of pay.

184.    Therefore, Defendants failed to properly provide Named Plaintiffs Lusk, Council, and similarly situated delivery drivers, with the information regarding their rate of pay as required by NYLL § 195.

*Defendants Violated the NYLL by Failing to Provide Wage Statements.*

185.    This claim arises under the Wage Theft Prevention Act, pursuant to NYLL § 195.

186.    Defendants failed to provide Named Plaintiffs and those similarly situated with wage statements that complied with the requirements of the NYLL. For example, Named Plaintiffs were not given wage statements that contained allowances claimed by Defendants including the tip credit as required by NYLL § 195(3) as amended by the New York Wage Theft Prevention Act.

187.    Therefore, Defendants failed to properly provide Named Plaintiffs Lusk, Council, and similarly situated delivery drivers, with the wage statements as required by NYLL § 195.

***Defendants Violated NYLL and Other Applicable State Laws by Improperly Calculating the Regular Rate Used to Calculate the Overtime Rate of Pay.***

188.    Defendants' pay policy and practice was to exclude certain remuneration, such as the mandatory delivery charges and/or the "additional wages" identified on the paystubs, from the regular rate used to calculate the overtime rate of pay.

189.    As a result of this pay policy and practice, Named Plaintiffs and the Class were not properly compensated for overtime worked in excess forty (40) hours in a workweek in violation of NYLL and other applicable state laws.

190.    On numerous occasions throughout their employment, including during the three (3) years preceding the filing of this action, Plaintiffs worked over forty (40) hours in a workweek, thus entitling them to overtime pay at time and one half the regular rate of pay.

191.    However, the delivery charges and/or the "additional charges" were not included in the regular rate used to calculate the overtime rate of pay for weeks they worked over forty (40) hours.

192.    Without the benefit of reviewing all of his time and pay records, Mr. Lusk estimates that he worked over 40 hours in a workweek approximately twice a month during his initial six months of employment, thus entitling him to overtime pay at time and one half his regular rate of pay.  On average, in the weeks that he worked overtime, Plaintiff Lusk estimates he worked approximately 42 to 46 hours.  Further, during each of the weeks in which Plaintiff Lusk worked in excess of 40 hours in a workweek, Plaintiff Lusk also received a portion of the

delivery charge and/or the "additional charges," which were not included in the regular rate calculations.

193. For instance, during the workweek August 17, 2015 through August 23, 2015, Plaintiff Lusk worked a total of 41.33 hours. The paystub reflects that the initial 40 hours were paid at a rate of $5.00 per hour, with the overtime pay being paid at a rate of $9.375 for the remaining 1.33 hours, totaling $220.84. When adding the "additional wages" of $115.62 to the $220.84 in hourly pay, Plaintiff Lusk made approximately $336.46. Then, dividing the total $336.46 by his 41.33 hours, Plaintiff Lusk's regular rate would be $8.14, and his overtime rate would be $12.21 ($8.14 x 1.5) instead of the $9.375 rate reflected on his paystub.

194. Plaintiff Lusk's pay during the workweek August 17, 2015 through August 23, 2015 is only one example of his overtime rate not being calculated properly and is in no way an exhaustive list.

195. Without the benefit of reviewing all of his time and pay records, Ms. O'Brien estimates that she worked over 40 hours in a workweek approximately once a month, thus entitling her to overtime pay at time and one half her regular rate of pay. On average, in the weeks that she worked overtime, Plaintiff O'Brien estimates she worked an additional shift of approximately 7 hours. Further, during each of the weeks in which Plaintiff O'Brien worked in excess of 40 hours in a workweek, Plaintiff O'Brien also received a portion of the delivery charge and/or the "additional charges" which were not included in the regular rate calculations.

196. As an example, during workweek September 21, 2015 through September 27, 2015, Ms. O'Brien received two separate paychecks, for her work at two different locations, which together totaled 49.72 hours. The paystubs reflect that the 49.72 hours (paid across two paystubs) were paid at a rate of $5.00 per hour, totaling $248.60. When adding the

"additional wages" of $136.50 to the $248.60 in hourly pay, Plaintiff O'Brien made approximately $385.10.  When dividing the total $385.10 by her 49.72 hours, Plaintiff O'Brien's regular rate would be $7.75, and her overtime rate would be $11.62 ($7.75 x 1.5), instead of the $5.00 per hour she received.

197.    Plaintiff O'Brien's pay during the workweek September 21, 2015 through September 27, 2015 is only one example of her overtime rate not being calculated properly and is in no way an exhaustive list.

198.    The pay and timekeeping records Defendants are required to maintain for Plaintiffs show additional particular workweeks in which Plaintiffs worked more than forty (40) hours but Defendants failed to properly include the mandatory delivery charge and/or the "additional wages" identified on the paystubs in their regular rate of pay used to calculate the overtime rate.

199.    Defendants' failure to include all remuneration in the regular rate of pay used to calculate the overtime rate is a pay policy that applies to the Plaintiffs and the Class.

200.    As a result of Defendants' unlawful pay policies and practices as described herein, Named Plaintiffs, similarly situated employees and the Class suffered a loss of wages.

## COLLECTIVE ACTION ALLEGATIONS

201.    Named Plaintiffs bring this action on behalf of themselves and all other similarly situated employees as authorized under 29 U.S.C. § 216(b).  The employees similarly situated for purposes of the collective action are discussed below.

202.    Filed in connection with the complaint was the written consents to join this action duly executed by the 4 Named Plaintiffs and approximately 88 Opt-In Plaintiffs pursuant to 29 U.S.C. § 216(b).  *See* Docket Nos. 2-4, 6-7.

*Collective Action Allegations for the Failure to Reimburse Expenses and Costs Collective Class.*

203.   As described above, Defendants have a policy not to reimburse delivery drivers for vehicle and/or related expenses.

204.   Thus, all current and former employees of Defendants who in the last three years worked as delivery drivers, were not reimbursed for vehicle and/or related expenses, and elect to opt-in to this action, are members of this collective class ("Failure to Reimburse Expenses and Costs Collective Class").

205.   Defendants' policy and pattern or practice was to willfully fail to pay Plaintiffs the mandatory minimum wage.

206.   Defendants are or should be aware that federal law requires them to pay delivery drivers at least minimum wage.

207.   The Failure to Reimburse Expenses and Costs Collective Class are similarly situated because they have similar job duties and similar pay provisions based on Defendants' policy of failing to pay them minimum wage for all hours worked.

208.   There are numerous similarly situated current and former delivery drivers of Defendants who would benefit from issuance of a Court-supervised notice of the instant lawsuit and the opportunity to join the present lawsuit.

209.   Similarly situated employees are known to Defendants and readily identifiable by Defendants through Defendants' payroll records.

210.   Therefore, Named Plaintiffs should be permitted to bring this action as a collective action for and on behalf of those employees similarly situated pursuant to the opt-in provision of the FLSA, 29 U.S.C. § 216(b).

*Collective Action Allegations for the Subminimum Wage Collective Class.*

211.    As discussed above, Defendants have a policy to pay delivery drivers subminimum wage.

212.    Thus, all current and former employees who in the last three years worked as delivery drivers, were paid subminimum wage, and elect to opt-in to this action, are members of this collective class ("Subminimum Wage Collective Class").

213.    The FLSA requires that employees are paid the statutory minimum wage unless the employer is eligible to pay the federal tipped minimum wage under 29 U.S.C. § 203(m).

214.    Defendants' policy and pattern or practice did not inform the Named Plaintiffs and similarly situated employees of the FLSA's tip credit provision 29 U.S.C. § 203(m) and supporting federal regulations, including, but not limited to, 29 C.F.R. § 516.4.

215.    Defendants are aware or should be aware that federal law required them to pay the delivery drivers at least minimum wage because Defendants are not entitled to a tip credit under 29 U.S.C. § 203(m).

216.    The Subminimum Wage Collective Class members are similarly situated in that they have similar job duties and similar pay provisions based on Defendants' illegal policy of not providing requisite notice but still paying subminimum wages.

217.    There are numerous similarly situated current and former delivery drivers of Defendants who would benefit from issuance of a Court-supervised notice of the instant lawsuit and the opportunity to join the present lawsuit.

218.    Similarly situated employees are known to Defendants and readily identifiable by Defendants through Defendants' payroll records.

219.    Therefore, Named Plaintiffs should be permitted to bring this action as a collective action for and on behalf of those employees similarly situated pursuant to the opt-in provision of the FLSA, 29 U.S.C. § 216(b).

**Collective Action Allegations for the Regular Rate Collective Class.**

220.    As described above, Defendants have a policy of not properly calculating the overtime rate of employees.

221.    Thus, all current and former employees who in the last three years worked as delivery drivers for Defendants, worked in excess of forty (40) hours in one or more workweeks during that time period, elect to opt-in to this action, and did not have mandatory delivery charges and/or "additional wages" included in their regular rate of pay used to calculate their overtime rate, are members of this collective class ("Regular Rate Collective Class").

222.    Defendants' policy and pattern or practice includes retaining a portion of the delivery charge and failing to include mandatory service charges and "additional wages" identified on the paystub in the regular rate of pay used to calculate the overtime rate.

223.    Defendants also knowingly and willfully operate their business with a policy of failing to include all remuneration, such as mandatory service charges and "additional wages", in the regular rate of pay used to calculate the overtime rate under the FLSA for Named Plaintiffs and other similarly situated employees.

224.    The Regular Rate Collective Class members are similarly situated in that they work are all subject to similar pay provisions based on Defendants' illegal policy of not including mandatory delivery charges and/or "additional wages" in the regular rate of pay when calculating their overtime rate.

225.    There are numerous similarly situated current and former delivery drivers of Defendants who would benefit from issuance of a Court-supervised notice of the instant lawsuit and the opportunity to join the present lawsuit.

226.    Similarly situated employees are known to Defendants and readily identifiable by Defendants through Defendants' payroll records.

227.    Therefore, Named Plaintiffs should be permitted to bring this action as a collective action for and on behalf of those employees similarly situated pursuant to the opt-in provision of the FLSA, 29 U.S.C. § 216(b).

### CLASS ACTION ALLEGATIONS

228.    The claims arising under the state labor laws of New York, Michigan, and Indiana, are properly maintainable as a class action under Federal Rule of Civil Procedure 23 ("Rule 23").

229.    The Rule 23 class consists of the following seven subclasses:

(a)     New York Minimum Wages Subclass: All persons who worked as delivery drivers for Defendants in New York, who, at any time in the six years prior to the filing of this action through the entry of judgment in this matter, were not reimbursed for vehicle costs and/or other related expenses.

(b)     Michigan Minimum Wages Subclass: All persons who have worked as delivery drivers for Defendants in Michigan, who, at any time in the three years prior to the filing of this action through the entry of judgment in this matter, were not reimbursed for vehicle costs and/or other related expenses.

(c)     Indiana Minimum Wages Subclass: All persons who have worked as delivery drivers for Defendants in Indiana, who, at any time in the three years prior to the filing of this action through the entry of judgment in this matter, were not reimbursed for vehicle costs and/or other related expenses.

(d)     New York Unpaid Wages Subclass: All persons who have worked as delivery drivers in New York, who, at any time in the six years prior to

the filing of this action through the entry of judgment in this matter, was not paid for all hours worked, including at rates of at least time one-and-one half the regular rate for each hour in excess of 40 hours per week.

(e) <u>New York Illegal Retention of Gratuities Subclass</u>: All persons who worked as delivery drivers in New York, who, at any time six years prior to the filing of this action through the entry of final judgment in this matter, did not receive the collected gratuity automatically added on to customers' delivery bills.

(f) <u>Wage Theft Prevention Act Subclass</u>: All persons who worked in New York, who, at any time six years prior to the filing of this action through the entry of final judgment in this matter, did not receive proper written notices as required under the Wage Theft Prevention Act.

(g) <u>Wage Statement Subclass:</u> All persons who worked in New York, who, at the time six years prior to the filing of this action through the entry of final judgment in this matter, did not receive the required wage statements.

230. The class action is maintainable under subsections (1), (2), (3) and (4) of Rule 23(a).

231. Numerosity is satisfied because the Class size is believed to be over 40 members. Therefore, the Class is so numerous that joinder of all members is impracticable. The identity of the Class Members is known to Defendants and is contained in the employment records they are required to maintain under the FLSA, and applicable state law.

232. The Named Plaintiffs and the other members of the Class share common issues of law and fact as to whether they were paid properly and have common claims that are typical of the claims of the Class because they are or were employed by Defendants as delivery drivers, were subject to the same policies and practices and suffered similar losses, injuries and types of damages as a result of Defendants' failure to comply with the applicable state law.

233.     Common issues of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class Members. Among the common issues of law and fact are the following:

- Whether Defendants provided delivery drivers reimbursement of costs and expenses incurred while delivery food;

- Whether Defendants' policy of failing to pay the Subminimum Wage subclass members the proper minimum wage was willful or in reckless disregard of the law;

- Whether Defendants failed to provide time and one-half the regular rate when employees worked in excess of 40 hours in a workweek;

- Whether Defendants failed to remit a portion of the mandatory gratuity/service charge to Plaintiffs;

- Whether Defendants properly notified customers that the mandatory service charges were not being distributed to Plaintiffs;

- Whether Defendants violated the NYLL and the supporting regulations by failing to provide the requisite notice to the Subminimum Wage subclasses;

- Whether Defendants failed to provide proper written notice to Plaintiffs as required under the Wage Theft Prevention Act;

- Whether Defendants failed to provide the necessary wage statements to Plaintiffs in New York; and

- Whether Defendants are liable for all damages claimed.

234.     These common questions of law and fact also predominate over any questions affecting only individual members.

235.     The Named Plaintiffs' claims are typical of the claims of other members of the Class because Named Plaintiffs were delivery drivers working at Insomnia Cookies' locations, and were paid subminimum wages.   Further, as delivery drivers, Named Plaintiffs were not reimbursed for vehicle costs and/or other related expenses incurred while delivering food for

Defendants.  Additionally, similar to other members of the Class in Michigan and New York, Named Plaintiffs Lusk, Council, and O'Brien did not receive the requisite notice required under the Michigan and New York state laws to pay a tip credit rate. Named Plaintiffs Lusk and Council also did not receive all of the mandatory charge for service that was added to customer bills just like all of the other members of the Class and was paid a subminimum wage rate of pay.  Additionally, similar to other members of the Class, Named Plaintiff Lusk did not receive time and one half the regular rate when working in excess of 40 hours in a workweek.  Finally, Named Plaintiffs Lusk and Council did also not receive the proper Wage Theft Prevention paperwork and wage statements like New York Class Members. Named Plaintiffs therefore sustained damages arising out of Defendants' conduct in violation of the New York, Michigan, and Indiana, just like other members of the Class.

236.    Named Plaintiffs and their counsel will fairly and adequately protect the interests of the Class. Named Plaintiffs have no interest antagonistic to the Class, and have retained counsel experienced in wage and hour class action litigation.

237.    Class counsel Thomas & Solomon LLP is qualified and able to litigate Named Plaintiff and Class claims.

238.    Thomas & Solomon LLP concentrates its practice in employment litigation, and its attorneys are experienced in class action litigation, including class actions arising under wage and hour laws.

239.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy and avoids duplication by allowing these claims to be prosecuted in a single action. Named Plaintiffs and members of the Classes lack the resources to adequately prosecute separate claims, and the amount that each individual stands to recover

makes individual cases impractical to pursue. The only practical chance for the delivery drivers to recover their unpaid wages and gratuities is through a class action.

240.    The class action is also maintainable under subsection (2) of Rule 23(b) because the Named Plaintiffs and subclass members seek injunctive relief against Defendants, and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein.

241.    Moreover, the class action is maintainable under subsection (3) of Rule 23(b) because the Named Plaintiffs and subclass members seek to resolve common questions of law and fact (*see supra* ¶ 233) that predominate among the Named Plaintiffs and subclass members and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

242.    The subclasses are also maintainable under Rule 23(c)(4) because resolution of common issues will significantly advance the litigation or entitle Plaintiffs to injunctive relief.

<u>**FIRST CAUSE OF ACTION**</u>
*Violation of the FLSA – Minimum Wages*

243.    Plaintiffs hereby re-allege the above paragraphs as if fully restated herein.

244.    This count arises from Defendants' willful violation of the FLSA, 29 U.S.C. § 201 *et seq.*, for their failure to pay minimum wages to the Plaintiffs. Plaintiffs bring this claim as a collective action under Section 16(b) of the Act. 29 U.S.C. § 216(b).

245.    Plaintiffs are not exempt from the minimum wage provisions of the FLSA.

246.    Plaintiffs were paid hourly rates that, when offset by unreimbursed costs and expenses incurred in the performance of their job duties, were less than the minimum hourly rate.

247.     As a direct and proximate cause of Defendants' acts, including Defendants' failure to act in good faith, Defendants willfully violated the FLSA.

## SECOND CAUSE OF ACTION
### *Violation of the FLSA – Minimum Wages for Failure to Provide Tip Credit Notice*

248.     Plaintiffs hereby re-allege the above paragraphs as if fully restated herein.

249.     This count arises from Defendants' willful violation of the FLSA, 29 U.S.C. §201 *et seq.*, for their failure to pay minimum wages to the Plaintiffs. Plaintiffs bring this claim as a collective action under Section 16(b) of the Act. 29 U.S.C. § 216(b).

250.     Defendants unlawfully paid delivery drivers below minimum wage because Defendants failed to inform Named Plaintiffs and Class Members of the tip credit provisions.

251.     Accordingly, Defendants are not eligible to pay Named Plaintiffs and Class Members below minimum wage under the FLSA.

## THIRD CAUSE OF ACTION
### *Violation of the FLSA – Regular Rate*

252.     Plaintiffs hereby re-allege the above paragraphs as if fully restated herein.

253.     This count arises from Defendants' willful violation of the FLSA, 29 U.S.C. § 201 *et seq.*, for their failure to properly calculate the regular rate of pay used to calculate the regular rate for Plaintiffs.  Plaintiffs bring this claim as a collective action under Section 16(b) of the Act. 29 U.S.C. § 216(b).

254.     Defendants failed to pay Named Plaintiffs O'Brien, Lusk, and Class Members, for all work performed in excess of 40 hours in a workweek at the statutorily required overtime rates.

255.     Defendants willfully violated their obligations under the FLSA and are liable to Named Plaintiffs O'Brien, Lusk, and Class Members.

## FOURTH CAUSE OF ACTION
### *Violation of New York Law – Minimum Wages*

256.    Plaintiffs hereby re-allege the above paragraphs as if fully restated herein.

257.    This count arises from Defendants' willful violation of the NYLL, New York Minimum Wage Act, Article 19, § 650 *et seq.*, for Defendants' failure to pay minimum wages to Named Plaintiffs Lusk, Council and the Class.

258.    For example, Defendants have a practice of failing to reimburse delivery drivers for vehicle and/or other related expenses incurred while delivering food for the benefit of Defendants.

259.    Additionally, Defendants failed to provide written notice of the tip credit or allowance to Named Plaintiffs Lusk, Council, and the Class, as required under New York State law.

260.    At all relevant times relevant to the litigation, Defendants did not comply with NYLL's tip credit provision and the supporting New York State Department of Labor Regulations, including, but not limited to 12 N.Y.C.R.R. § 146.2-2.

261.    Accordingly, Defendants have violated the NYLL by failing to pay Plaintiffs mandatory minimum wages.

## FIFTH CAUSE OF ACTION
### *Violation of Michigan Law – Minimum Wages*

262.    Plaintiffs hereby re-allege the above paragraphs as if fully restated herein.

263.    This count arises from Defendants' willful violation of the Mich. Comp. Laws, § 408.414, *et seq.*, ("MWWL"), for Defendants' failure to pay minimum wages to the Named Plaintiff O'Brien and the Class.

264.    For example, Defendants have a practice of failing to reimburse delivery drivers for vehicle and/or other related expenses incurred while delivering food for the benefit of Defendants.

265.    Additionally, Defendants failed to provide written notice of the tip credit or allowance to Named Plaintiff O'Brien, and the Class, as required under Michigan Law. At all relevant times relevant to the litigation, Defendants did not comply with Michigan's tip credit provision, M.C.L.A. 408.414d.

266.    Named Plaintiffs and the Class are current and former delivery drivers who are due, and who have not been paid, minimum wages under the provisions of the MWWL.

267.    Accordingly, Defendants have violated the MWWL by failing to pay Plaintiffs mandatory minimum wages.

## SIXTH CAUSE OF ACTION
### Violation of Indiana Law – Minimum Wages

268.    Plaintiffs hereby re-allege the above paragraphs as if fully restated herein.

269.    This count arises from Defendants' willful violation of the Indiana Minimum Wage Act ("MWL"), Ind. Code Section 22-2-2-4, *et seq.*, for Defendants' failure to pay minimum wages to the Named Plaintiff Byroad and the Class.

270.    For example, Defendants have a practice of failing to reimburse delivery drivers for vehicle and/or other related expenses incurred while delivering food for the benefit of Defendants.

271.    Accordingly, Defendants have violated the MWL by failing to pay Plaintiffs mandatory minimum wages.

## SEVENTH CAUSE OF ACTION
### *Violation of New York Law – Unpaid Wages*

272.    Plaintiffs hereby re-allege the above paragraphs as if fully restated herein.

273.    This count arises from Defendants' failure to pay Named Plaintiffs and Class Members for all hours worked, including at rates of at least one-and-one half times the regular rate of pay for each hour worked in excess of forty hours per week, in violations of NYLL § 191 *et seq*., and accompanying regulations including 12 N.Y. COMP. CODES R. & REGS. § 142-2.2.

274.    Defendants violated their obligations under NYLL because they regularly and repeatedly failed to pay employees at a rate not less than one-and-one-half times their regular rate of pay for all hours worked in excess of forty per week, and are liable to Named Plaintiffs and the Class Members.

## EIGHTH CAUSE OF ACTION
### *Illegal Retention of Gratuities under NYLL*

275.    Named Plaintiffs Lusk and Council and the New York Unpaid Gratuities Subclass re-allege the above paragraphs as if fully restated herein.

276.    The mandatory delivery charges constitute gratuities under NYLL.

277.    Under NYLL Article 6 § 196-d, employers may not "demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

278.    Defendants unlawfully withheld and retained gratuities that the reasonable customer would believe would be distributed to Named Plaintiffs and the New York Unpaid Gratuities Subclass.

279.    As a direct and proximate cause of Defendants' acts, including Defendants' failure to act in good faith, Defendants willfully violated the NYLL and Named Plaintiffs and

the New York Unpaid Gratuities Subclass have suffered damages pursuant to NYLL Article 6, § 196-d.

## NINTH CAUSE OF ACTION
### *NYLL- Wage Notice Violations*

280.    Named Plaintiffs Lusk, Council, and the Class reallege the above paragraphs as if fully restated herein.

281.    The notice provisions of the Wage Theft Prevention Act, Article 6 of the NYLL and its supporting regulations apply to Defendants, and protect Named Plaintiffs and Class Members.

282.    From April 2011 through 2014, NYLL § 195-1(a) required Defendants to provide Named Plaintiffs and Class Members with a yearly notice, at the time of hiring, and on or before February first of each subsequent year of employment, containing certain required information including the employee's rate of pay and the overtime rate of pay, if the employee is subject to overtime requirements.

283.    Effective February 27, 2015, the yearly notice requirement was eliminated but Defendants are still required to provide Named Plaintiffs and Class Members with a notice at the time of hiring.

284.    Defendants have failed to comply with the notice provisions of the Wage Theft Prevention Act, and more specifically NYLL § 195-1.

285.    Due to Defendants' violations of the NYLL, Named Plaintiffs and Class Members are entitled to recover from Defendants the sum of $50 per day, up to a total of $5,000 per employee, as provided for by NYLL Article 6, § 198(1-b).

## TENTH CAUSE OF ACTION
### *Violation of New York Law – Wage Statement Violations*

224.   Plaintiffs hereby re-allege the above paragraphs as if fully restated herein.

225.   This count arises from Defendants' failure to provide Named Plaintiffs Lusk, Council, and those similarly situated, with wage statements that complied with the requirements of NYLL § 195 (3).

226.   Defendants have failed to comply with the wage statement provisions.

227.   Due to Defendants' violations of the NYLL, Named Plaintiffs and Class Members are entitled to recover from Defendants the sum of $250 per work day, up to a total of $5,000 per employee, as provided for by NYLL Article 6, § 198(1-d).

## ELEVENTH CAUSE OF ACTION
### *Violation of the Applicable State Laws – Minimum Wages*

286.   Plaintiffs hereby re-allege the above paragraphs as if fully restated herein.

287.   This count arises from Defendants' willful violation of the applicable minimum wage laws, for Defendants' failure to pay minimum wages to the Plaintiffs and the Class.

288.   For example, Defendants have a practice of failing to reimburse delivery drivers for vehicle and/or other related expenses incurred while delivering food for the benefit of Defendants.

289.   Named Plaintiffs and the Class are current and former delivery drivers who are due, and who have not been paid, minimum wages under the provisions of the applicable state laws.

290.   Accordingly, Defendants have violated the state laws by failing to pay Plaintiffs mandatory minimum wages.

### TWELFTH CAUSE OF ACTION
*Violation of Applicable State Laws – Unpaid Wages*

291.   Plaintiffs hereby re-allege the above paragraphs as if fully restated herein.

292.   This count arises from Defendants' failure to pay Named Plaintiffs and Class Members for all hours worked, including at rates of at least one-and-one half times the regular rate of pay for each hour worked in excess of forty hours per week, in violations of applicable state laws.

293.   Defendants violated their obligations under state laws because they regularly and repeatedly failed to pay employees at a rate not less than one-and-one-half times their regular rate of pay for all hours worked in excess of forty per week, and are liable to Plaintiffs and Class Members.

**WHEREFORE**, Named Plaintiffs and Class Members demand judgment against Defendants in their favor and that they be given the following relief:

a.   an order preliminarily and permanently restraining Defendants from engaging in the aforementioned pay violations;

b.   an order certifying the classes as requested and designating Thomas & Solomon LLP as class counsel;

c.   designation of Named Plaintiffs Skyler Lusk, Tia Council, Viktoria O'Brien, and Justin Byroad, as Class Representatives;

d.   an award of the value of Named Plaintiffs' and Class Members' unpaid wages and gratuities;

e.   liquidated damages under the FLSA equal to the sum of the amount of wages which were not properly paid to Plaintiffs;

f.   under NYLL § 198, an additional amount as liquidated damages equal to one hundred percent of the total amount of wages found to be due;

g.   liquidated damages in the amount equal to two times the amount of wages due to an employer as provided under IND. CODE ANN. § 22-2-5-2;

h.      liquidated damages under MICH. COMP. LAWS § 408.419;

i.      liquidated damages as permitted under applicable state laws;

j.      an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Named Plaintiffs' and Class Members' rights;

k.      penalties as provided under NYLL § 198;

l.      an award of pre- and post-judgment interest;

m.      service payments for the Named Plaintiffs;

n.      the amount equal to the value that would make Named Plaintiffs and the Class Members whole for the violations; and

o.      such other and further legal or equitable relief as this Court deems to be just and appropriate.

## JURY DEMAND

Plaintiffs demand a jury to hear and decide all issues of fact in accordance with Federal Rule of Civil Procedure 38(b).

Dated: June 21, 2018.

### THOMAS & SOLOMON LLP

By:      /s Jessica L. Lukasiewicz                           
         J. Nelson Thomas, Esq.
         Michael J. Lingle, Esq.
         Sarah E. Cressman, Esq.
         Jessica L. Lukasiewicz, Esq.
         *Attorneys for Plaintiffs*
         693 East Avenue
         Rochester, New York 14607
         Telephone:  (585) 272-0540
         nthomas@theemploymentattorneys.com
         mlingle@theemploymentattorneys.com
         scressman@theemploymentattorneys.com
         jlukasiewicz@theemploymentattorneys.com