```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

```
SKYLER LUSK, TIA COUNCIL, VIKTORIA
O'BRIEN, and JUSTIN BYROAD, on
behalf of themselves and all other
employees similarly situated,           No. 6:17-cv-06451-MAT
                                        DECISION AND ORDER
                    Plaintiffs,
        -vs-

SERVE U BRANDS, INC., INSOMNIA
COOKIES, LLC, and SETH BERKOWITZ,

                    Defendants.
```

**INTRODUCTION**

Skyler Lusk, Tia Council, Viktoria O'Brien, and Justin Byroad (collectively, "Plaintiffs"), former delivery drivers for Insomnia Cookies, LLC ("Insomnia"), commenced the instant action against Serve U Brands, Inc., Insomnia, and Seth Berkowitz (collectively, "Defendants") on July 11, 2017, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("the FLSA"), as well as violations of the state laws of New York, Michigan, and Indiana. Docket No. 1. Presently before the Court are Defendants' converted Motion for Summary Judgment (Docket No. 67) seeking to dismiss the claims of six plaintiffs they claim are subject to individual dispute resolution agreements, and Named Plaintiffs' Cross-Motion to Stay Proceedings for the Six Putative Opt-In Plaintiffs Subject to Individual Dispute Resolution Agreements (Docket No. 79).

**FACTUAL BACKGROUND**

Pursuant to 29 U.S.C. § 216(b), Plaintiffs filed consent forms for approximately 88 current and former Insomnia employees. Since the commencement of the action, Defendants have identified six of the Opt-In Plaintiffs, i.e., Avery Buggs ("Buggs"), Christopher Lee Caldwell ("Caldwell"), Dylan Burgett ("Burgett"), Hannah Stanger ("Stanger"), Michael Crespo ("Crespo") and Ben Sehnert ("Sehnert"), as individuals who executed individual dispute resolution agreements ("DRAs") which, Defendants assert, contain a provision precluding them from joining a class action to litigate any employment claims. Defendants state that the DRAs also contains a class and collective action waiver precluding the six individuals who signed DRAs from participating in this action. These individuals, whom the parties refer to as the "DRA Opt-In Plaintiffs," filed Consents to Join this lawsuit against Defendants; the Consents were filed with the Court on July 11, 2017. See Docket Nos. 3 & 4.

Citing the DRA's class and collective waiver, Defendants argued in their Motion to Dismiss, inter alia, that (1) an employee's right to litigate on a collective basis is a waivable procedural right, and the DRA Opt-In Plaintiffs waived that right in the DRA to resolve employment disputes with Insomnia; (2) contractual collective action waivers, like those in the DRA are enforceable; (3) the claims asserted by the DRA Opt-In

Plaintiffs here fall within the scope of the DRA and must be resolved pursuant to the terms of the DRA; and (4) the Court should address the DRA's enforceability prior to a decision on conditional class certification is rendered. Defendants further argue that because the Opt-in Plaintiffs ignored Defendants' multiple communications regarding the DRA, necessitating the Motion to Dismiss, they should be responsible for Defendants' fees and costs associated with making this motion pursuant to FRCP 41.

On January 14, 2019, the Court issued a Decision and Order (Docket No. 115) converting the Motion to Dismiss to a motion for summary judgment pursuant to Federal Rule of Civil Procedure ("FRCP") 56 and requesting additional briefing on the issue of what law applies to the DRAs at issue. Defendants submitted a Supplemental Memorandum of Law (Docket No. 135) on February 11, 2019. In a text order dated July 30, 2019, the Court modified the final briefing schedule for Docket Nos. 67 and 79, directing responses to be due by August 27, 2019, and replies to be filed September 10, 2019. On August 27, 2019, Plaintiffs sent a letter (Docket No. 171) to the Court indicating their intention to rely on the papers they previously submitted (Docket No. 79) in support of their cross-motion to stay. Defendants filed a Reply (Docket No. 173) on September 10, 2019.

The motions were submitted without oral argument on September 11, 2019. For the reasons discussed below, Defendants'

converted Motion for Summary Judgment (Docket No. 67) is granted in part and denied. Plaintiffs' Cross Motion to Stay (Docket No. 79) is denied.

**FRCP 56**

FRCP 56 provides that the Corut "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only a factual dispute that is genuine and material will defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

**DISCUSSION**

**I. Choice of Law**

Defendants assert that there is no conflict among any of the relevant jurisdictions and that courts in each those states have recognized that individual dispute resolution agreements between employees and employers are enforceable. Defendants also submit that, according to the DRA, the law of the state where each DRA Opt-In Plaintiff worked controls the interpretation and enforceability of the DRA signed by him or her. Thus, Defendants assert, Florida law applies to Burgett, Illinois law applies to Stanger, Michigan law applies to Buggs, Mississippi law applies to Caldwell, North Carolina law applies to Crespo, and Pennsylvania law applies to Sehnert. Plaintiffs do not argue otherwise.

The Court agrees that the law of the state where each DRA Opt-In Plaintiff signed his or her agreement applies. However, the Court disagrees with Defendants that the law of each state mandates the enforceability of DRAs at issue in this action. In particular, the Court finds that the Sixth Circuit has taken a position that does not support Defendants' argument. The Court further finds that Epic Systems Corp. v. Lewis, 138 S. Ct. 1612 (2018) ("Epic"), does not lead inexorably to the result urged by Defendants.

**II. Waivability of the Right to Proceed Collectively Under the FLSA**

Defendants argue that the right to proceed collectively under the FLSA is procedural rather than substantive in nature and thus can be waived by an employee. See Docket No. 67-1 at 5-6 citations omitted); see also Docket No. at 4-5 (citations omitted). Defendants assert, "[i]t is clear after the Supreme Court's decision in [Epic] that class and collective action waivers of employment claims in dispute resolution agreements are valid and enforceable." As discussed below, the Court finds that Epic's holding does not reach as far as Defendants urge.

Epic consolidated two case in which an employer and employee entered into a contract providing for individualized arbitration proceedings to resolve employment disputes between the parties. Notwithstanding these contracts, each employee sought to litigate FLSA and related state law claims through class or collective actions in federal court. Although the Federal Arbitration Act

("FAA") generally requires courts to enforce arbitration agreements as written, the employees argued that its "saving clause" removes this obligation if an arbitration agreement violates some other federal law and that, by requiring individualized proceedings, the agreements here violated the National Labor Relations Act ("NLRA"). The employers countered that the FAA protects agreements requiring arbitration from judicial interference and that neither the saving clause nor the NLRA demands a different conclusion. Until recently, courts as well as the general counsel of the National Labor Relations Board ("NLRB") had agreed that such arbitration agreements are enforceable. But in 2012, the NLRB ruled that the NLRA effectively nullifies the FAA in cases like the ones at issue in Epic. Since that time, the lower courts either agreed with or deferred to the NLRB's position.

In a five-four decision, the Supreme Court held that the FAA contains an explicit congressional directive that arbitration agreements providing for individualized proceedings must be enforced, and neither the FAA's saving clause nor the NLRA suggests otherwise. See Epic, 138 S. Ct. at 1621-32. The FAA's saving clause—which allows courts to refuse to enforce arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any contract," FAA, § 2—recognizes only "'generally applicable contract defenses, such as fraud, duress, or unconscionability,'" 138 S. Ct. at 1622 (quotation omitted), "not

defenses targeting arbitration either by name or by more subtle methods, such as by 'interfer[ing] with fundamental attributes of arbitration,'" id. (quotation omitted; alteration in original). In Epic, the employees did not suggest that their "arbitration agreements were extracted . . . by an act of fraud or duress or in some other unconscionable way that would render any contract unenforceable." 138 S. Ct. at 1622 (emphasis in original). Rather, they challenged the agreements "precisely because they require individualized arbitration instead of class or collective proceedings," and thus they sought "to interfere with one of arbitration's fundamental attributes[,]" which is where their argument "stumble[d]." Id. (citation omitted). The Supreme Court further held that the provision of NLRA, which guarantees to workers the right to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, does not reflect a clearly expressed and manifest congressional intention to displace the FAA and to outlaw class and collective action waivers. 138 S. Ct. at 1624-25. Indeed, the majority noted, the NLRA does not express approval or disapproval of arbitration, it does not mention class or collective procedures, and it does not hint at a wish to displace the FAA. Id. at 1624.

The critical difference between Epic and the Circuit court and district court cases cited by Defendants is that they involved collective and class action waivers in the arbitration context. The

DRA at issue here does not contain an arbitration clause. See Killion v. KeHE Distributors, LLC, 761 F.3d 574, 591 (6th Cir. 2014) ("[Defendant-employer] nonetheless points to cases from other circuits enforcing agreements to arbitrate FLSA claims on an individual basis. . . . Crucially, however, the respective waiver agreements in all of the above-cited cases included provisions subjecting the employees to arbitration.") (citing Walthour v. Chipio Windshield Repair, LLC, 745 F.3d 1326, 1330 (11th Cir. 2014) (noting the existence of an arbitration agreement between the parties); Sutherland v. Ernst & Young LLP, 726 F.3d 290, 296 (2d Cir. 2013) (same); Owen v. Bristol Care, Inc., 702 F.3d 1050, 1052 (8th Cir. 2013) (same); Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 298 (5th Cir. 2004) (same); Adkins v. Labor Ready, Inc., 303 F.3d 496, 498 (4th Cir. 2002) (same)); see also Delaney v. FTS Int'l Servs., LLC, No. 4:16-CV-662, 2017 WL 264463, at *8 (M.D. Pa. Jan. 20, 2017) (recognizing "that the majority of the cases discussing the relevant issues arise in the context of arbitration agreements governed by the FAA, and are therefore distinguishable from the instant case [involving a class and collection action waiver signed by an employee agreeing to "to resolve or litigate any dispute, whether in court or otherwise, . . . solely on an individual basis").

In Killion, the Sixth Circuit observed that Walthour, Owens, Sutherland, Carter, and Adkins all relied on two Supreme Court

decisions, both of which addressed the FAA. Killion, 761 F.3d at 592 (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 35 (1991) ("We conclude that Gilmer has not met his burden of showing that Congress, in enacting the [Age Discrimination in Employment Act], intended to preclude arbitration of claims under that [FAA]."); Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013) ("No contrary congressional command requires us to reject the waiver of class arbitration here. Respondents argue that requiring them to litigate their claims individually—as they contracted to do—would contravene the policies of the antitrust laws. But the antitrust laws do not guarantee an affordable procedural path to the vindication of every claim."); Walthour, 745 F.3d at 1331 (citing Gilmer and Italian Colors); Sutherland, 726 F.3d at 296 (quoting Italian Colors); Carter, 362 F.3d at 298 (citing Gilmer); Adkins, 303 F.3d at 502 (citing Gilmer)). Killion noted that "that the considerations change when an arbitration clause is involved" because arbitration is an alternative to a judicial forum that "'allow[s] for the effective vindication of [the employee's] claim.'" Killion, 761 F.3d at 591 (quoting Boaz v. FedEx Customer Information Servs., Inc., 725 F.3d 603, 606–07 (alterations in Boaz; internal quotation marks omitted in Killion).

Accordingly, the Sixth Circuit concluded, "none of the foregoing authorities [from the Second, Fourth, Fifth, Eighth, and Eleventh Circuits] speak to the validity of a collective-action

waiver outside of the arbitration context." Killion, 761 F.3d at 592. Because no arbitration agreement was present in Killion, the Sixth Circuit found "no countervailing federal policy that outweighs the policy articulated in the FLSA." Id. Accordingly, the Sixth Circuit relied on Boaz to hold that the collective action waivers in the employees' separation agreements did not validly waive their rights to participate in a collective action to recover unpaid overtime under FLSA, absent an arbitration provision that provided an adequate alternative forum for the effective vindication of overtime claims. Id. In light of Killion's holding, the Court finds that the DRA signed by Buggs in Michigan, within the Sixth Circuit, is not enforceable. Accordingly, Defendants' summary judgment motion is denied as to Buggs.

With regard to the remaining DRA Opt-In Plaintiffs, the other Circuits involved are the Fifth, Third, Eleventh, Fourth, and Seventh. The Fifth, Fourth, and Eleventh Circuits have ruled in Carter, Adkins, and Walthour, respectively, that the right to proceed collectively is a procedural right that can be waived contractually. Although these cases were in decided in the arbitration context, Plaintiffs have offered no argument as to why these cases should not apply to the DRA Opt-In Plaintiffs who reside in these Circuits, i.e., Crespo (North Carolina/Fourth Circuit), Caldwell (Mississippi/Fifth Circuit), and Burgett (Florida/Eleventh Circuit). Accordingly, the Court will apply these

cases to find that the right to proceed collectively can be waived contractually; the Court's next step is to determine whether the DRAs signed by these Plaintiffs are enforceable contracts.

The Third and Seventh Circuits have not addressed this question, but district courts from these Circuits have ruled in Defendants' favor. See Delaney v. FTS Int'l Servs., LLC, No. 4:16-CV-662, 2017 WL 264463, at *8 (M.D. Pa. Jan. 20, 2017) ("While the Court recognizes that the majority of the cases discussing the relevant issues arise in the context of arbitration agreements governed by the FAA, and are therefore distinguishable from the instant case, the Court is persuaded by those cases which have found that the ability to litigate collectively under the FLSA is a procedural right subject to waiver outside of the arbitration context. . . . [T]he Court concludes, as a matter of law, that employees can waive their ability to participate in collective action litigation, as long as individual employees maintain the individual capacity to vindicate their rights.") (internal citations omitted); Copello v. Boehringer Ingelheim Pharm. Inc., 812 F. Supp.2d 886, 894-96 (N.D. Ill. 2011) (while FLSA prohibits substantive wage and hour rights from being contractually waived, it does not prohibit contractually waiving the procedural right to join a collective action; under either Connecticut or Illinois law, separation agreement and general release entered into between pharmaceutical company and its sales representative, which

prohibited sales representative from leading or participating in an FLSA collective action following her termination, was not procedurally or substantively unconscionable and was enforceable).

**III. Enforceability of the DRAs**

    **A.    Burgett's DRA Is Enforceable Under Florida Law**

"'A contract is made under Florida law when the three elements of contract formation are present: offer, acceptance, and consideration.'" In re Harrell, 351 B.R. 221, 241 (Bankr. M.D. Fla. 2006) (quoting Pezold Air Charters v. Phoenix Corp., 192 F.R.D. 721, 725 (M.D. Fla. 2000) (citing Air Prods. & Chems., Inc. v. The Louisiana Land & Exploration Co., 806 F.2d 1524, 1529 (11th Cir. 1986)).

"'The rule is generally recognized that for the parties to have a contract, there must be reciprocal assent to certain and definite propositions.'" Acosta v. Dist. Bd. of Trustees of Miami-Dade Cmty. Coll., 905 So. 2d 226, 228 (Fla. Dist. Ct. App. 2005) (quoting Truly Nolen, Inc. v. Atlas Moving & Storage Warehouses, Inc., 125 So.2d 903, 905 (Fla. 3d Dist. Ct. App. 1961)). Here, the DRA shows that Burgett and Insomnia "reciprocal[ly] assent[ed]" to "certain definite propositions," including the class-action waiver. Defendants offered the DRA to Burgett in consideration for his employment with Insomnia, and both parties agreed to be bound by the agreement. At the end of the DRA are the printed words, "AGREED: Insomnia Cookies." Underneath those

words are the words, "AGREED AND RECEIVED[,]" below which Burgett signed and printed his name, and dated the DRA.

"Under Florida law, '[a] promise, no matter how slight, qualifies as consideration if the promisor agrees to do something that he or she is not already obligated to do.'" Bhim, 655 F. Supp. 2d at 1312 (quoting Cintas Corp. No. 2 v. Schwalier, 901 So.2d 307, 309 (Fla. 1st Dist. Ct. App. 2005); alteration in original)). Burgett's employment with Insomnia constituted consideration in support of the DRA. See Bhim, 655 F. Supp.2d at 1313 ("Bhim received additional consideration, however, in the form of her continued employment at Rent-A-Center.") (citing Cintas Corp. No. 2, 901 So.2d at 309 (holding that promises of continued employment and increased pay and benefits provided consideration for arbitration contract)). Accordingly, the Court concludes that the DRA is valid and enforceable under Florida law.

**B. Stanger's DRA Is Enforceable Under Illinois Law**

Under Illinois law, "[a]n offer, an acceptance, and consideration are basic ingredients of a contract." Steinberg v. Chicago Med. Sch., 69 Ill. 2d 320, 329 (1977) (internal citations omitted). Defendants offered the DRA to Stanger in consideration for her employment with Insomnia, and both parties agreed to be bound by the agreement. At the end of the DRA are the printed words, "AGREED: Insomnia Cookies." Underneath those words are the words, "AGREED AND RECEIVED[,]" below which Stanger signed and

printed her name, and dated the DRA. Stanger's employment with Insomnia was sufficient consideration for the enforcement of the DRA. See Melena, 219 Ill.2d at 152 ("By continuing her employment with Anheuser-Busch, plaintiff both accepted the offer and provided the necessary consideration. . . .[U]nder Illinois law, continued employment is sufficient consideration for the enforcement of employment agreements.") (citing Duldulao v. Saint Mary of Nazareth Hospital Center, 115 Ill.2d 482, 490 (1987); Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc., 292 Ill. App. 3d 131 (1997); other citations omitted)).

**C. Caldwell's DRA Is Enforceable Under Mississippi Law**

Under Mississippi law, "'[a] valid contract must include the following essential elements: (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation.'" Rotenberry v. Hooker, 864 So. 2d 266, 273 (Miss. 2003) (quoting Lanier v. State, 635 So.2d 813, 826 (Miss. 1994)).

The first, second, third, and fifth elements are apparent on the face of the DRA. There are two contracting parties, i.e., Caldwell and Insomnia. Courts applying Mississippi law have "found adequate consideration where defendant employer 'conditioned its decision to employ plaintiff on [the plaintiff's] signing the arbitration agreement,' the defendant then paid and employed the

plaintiff, and the plaintiff received the benefit of employment." Green v. Faurecia Auto. Seating, Inc., No. 2:11CV173, 2012 WL 2367698, at *3 (N.D. Miss. June 21, 2012) (quoting Singleton v. Goldman, No. 3:11CV224TSL-MTP, 2011 WL 3844180, at *1, *2 (S.D. Miss. Aug. 30, 2011)). Caldwell's employment in exchange for signing the DRA thus amounts to adequate consideration. Id. Both Caldwell and Insomnia indicated their agreement to be bound by the DRA, the terms of which are clear, definite, and unambiguous.

As to the fourth and sixth elements, Plaintiffs have not asserted that Caldwell lacked the legal capacity to make a contract or that there was any legal prohibition that precluded Caldwell and Insomnia from entering into the DRA. Therefore, the Court finds that the DRA is valid and enforceable under Mississippi law.

**D. Crespo's DRA Is Enforceable Under North Carolina Law**

Under North Carolina law, "[a] valid contract 'requires offer, acceptance, consideration and no defenses to formation.'" Collie v. Wehr Dissolution Corp., 345 F. Supp.2d 555, 558 (M.D.N.C. 2004) (quoting Koltis v. North Carolina Dep't Human Res., 125 N.C. App. 268, 271, 480 S.E.2d 702, 704 (1997). "Mutual assent is typically 'established by an offer by one party and an acceptance by the other, which offer and acceptance are essential elements of a contract.'" Id. (quotation omitted). Here, Defendants offered the DRA to Crespo in consideration for his employment with Insomnia, and both parties agreed to be bound by the agreement. At the end of the DRA are the printed words, "AGREED: Insomnia Cookies."

-15-

Underneath those words are the words, "AGREED AND RECEIVED[,]" below which Crespo signed and printed his name, and dated the DRA. Plaintiffs have asserted no defenses to formation. Accordingly, the Court finds that the DRA is a valid contract under North Carolina law and is enforceable.

**E.   Sehnert's DRA Is Enforceable Under Pennsylvania Law**

Pennsylvania law directs a court to evaluate the following three criteria when determining the existence of a valid contract: "(1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." ATACS Corp. v. Trans World Commc'ns, Inc., 155 F.3d 659, 666 (3d Cir. 1998).

With regard to mutual assent, at the end of the DRA are the printed words, "AGREED: Insomnia Cookies." Underneath those words are the words, "AGREED AND RECEIVED[,]" below which Sehnert signed and printed his name, and dated the DRA. Plaintiffs have come forward with no evidence that Sehnert was deprived of an opportunity to read the DRA or that his signature was not provided freely and willingly. With regard to the clarity of terms, the DRA contains unambiguous language, and the class-action waiver, in particular, is called out in bold-faced type. As to the third criterion, consideration, courts in Pennsylvania have "repeatedly held that continued employment fulfills the consideration requirement under Pennsylvania law." Grant, 2009 WL 1845231, at *5

(citing Hamilton v. Travelers Prop. & Cas. Corp., No. 01-11, 2001 WL 503387, at *2 (E.D. Pa. May 11, 2001) (finding continued employment of two years following receipt of the employee handbook which included an arbitration agreement sufficient to constitute acceptance and consideration); other citations omitted). Accordingly, the Court finds that the DRA is a valid contract under Pennsylvania law and is enforceable.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Docket No. 67) is **granted** in part and **denied** in part. It is **granted** to the extent that the claims asserted by DRA Opt-In Plaintiffs Christopher Lee Caldwell, Dylan Burgett, Hannah Stanger, Michael Crespo and Ben Sehnert are **dismissed without prejudice**; it is **denied** as to DRA Opt-In Plaintiff Avery Buggs whose claims shall remain pending in this action; and it is **denied** to the extent that Defendants request attorney's fees and costs pursuant to FRCP 41(d). Plaintiffs' Cross-Motion to Stay (Docket No. 79) is **denied**. The Clerk of Court is directed to terminate Christopher Lee Caldwell, Dylan Burgett, Hannah Stanger, Michael Crespo and Ben Sehnert as parties to this action.

**SO ORDERED.**

S/Michael A. Telesca
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated: September 16, 2019
Rochester, New York.